## Armstrong School District *v.* Armstrong Education Association, et al.

Argued February 23, 1972, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Robert E. Pryde,* for appellant.

*Caram J. Abood,* with him *Green, Gibson and Abood,* for appellees.

*William Fearen,* with him *Cleckner & Fearen,* for Amicus Curiae.

OPINION BY JUDGE BLATT, May 17, 1972:

In *Armstrong Education Association v. Armstrong School District,* 5 Pa. Commonwealth Ct. 378, A. 2d (1972), filed herewith, we considered the enjoin-

ing of a strike which had been called by members of the Armstrong Education Association ("Association") against the Armstrong School District ("District"). We are now asked to deal with events which occurred following the issuance of that injunction.

The Association had been engaged in negotiations with the District since December 1970 over terms of its contract for the 1971-1972 school year, and had called a strike which the court below had enjoined in May 1971. On August 30, 1971, an agreement not having yet been reached, the teachers again went out on strike, and, under the authority of Section 1003 of the Public Employe Relations Act, Act of July 23, 1970, P. L. 563, No. 195, 43 P.S. §1101.1003 (hereinafter "Act No. 195"), the Court of Common Pleas of Armstrong County, on September 14, 1971, issued an injunction ordering all striking teachers to return to work. The parties then resumed collective bargaining but were unable to come to an agreement. The Association proposed to submit the matter voluntarily to binding arbitration, but the District refused to agree. On October 26, 1971, the Court of Common Pleas, on its own motion, issued an order requiring the Association and the District to submit the dispute to binding arbitration, and the court ordered further that the findings of the arbitrators be submitted to the court to be formally entered as an order of the court. The Association and the District each appointed arbitrators, who together appointed a third, and the arbitrators met and made findings as to the specific items which a contract between the parties should contain. On December 1, 1971, the court adopted these findings, incorporated them into its final order, and directed the Association and the District to enter into a contract in conformity therewith. The District appealed to this Court, contending that the lower court had no power to order

binding arbitration, and that its order, therefore, was void. The court below relied on its broad equity powers as justifying the orders it had made.

It is argued that the jurisdiction of the court below was obtained when the District began its action under Section 1003 of Act No. 195, asking that the strike be enjoined. That Section deals with strikes by public employees and reads in part: "In such cases the public employer shall initiate, in the court of common pleas of the jurisdiction where such strike occurs, an action for equitable relief including but not limited to appropriate injunctions. . . ." It is also argued that the action of the court below is supported by cases which hold that equity may intervene where a school board has committed an abuse of discretion in determining a matter, *Ritzman v. Coal Township School Directors,* 317 Pa. 271, 176 A. 447 (1935), or where the school board has been guilty of an error or misapplication of the law, or of an arbitrary action or clear abuse of discretion, *Myers v. Newtown Township School District,* 396 Pa. 542, 153 A. 2d 494 (1959).

It is clear that the lower court was faced with a most difficult problem. The parties appeared to be at a total impasse, with little likelihood of being able to work out a compromise. Community feeling was running high and the court believed that the quality of education in the District had already suffered and would suffer more if the dispute continued. In view of these circumstances, the rational course may well have been to submit the matter to binding arbitration. The need for an equitable result, however, is not of itself and standing alone a proper ground upon which equity jurisdiction can be claimed.

The history of equity jurisdiction in Pennsylvania is different from that in other states. Courts of Chancery existed here in colonial times, but public prejudice

was so strong against them that they were abolished after the Revolution. Courts of Common Pleas thereafter exercised only common law powers, and possessed none of the powers of a Court of Chancery. By the Act of June 16, 1836, P. L. 784, some power to grant relief in equity was again given to the courts of Philadelphia County, and, through subsequent legislation and Constitutional provisions, these powers were later expanded and granted to all common pleas courts in the Commonwealth. These powers are still limited, however, and the extent to which they may be exercised lies within the control of the Legislature.[1]

A Pennsylvania court's equity jurisdiction, therefore, is limited and well defined. "Equitable relief should only be granted where there is a constitutional or statutory basis for it, and before plaintiffs can expect relief from the equity side of the court they must point to the basis for such relief." *Golden v. Andrews,* 89 Dauph. 254, 256 (1968). "The courts of equity of Pennsylvania do not possess the general powers of a court of equity, but only such as have been conferred upon them by statute. This has been repeatedly pointed out. . . . And in Gilder v. Merwin, 6 Wharton 540, attention is called to the fact that the legislature has conferred upon the courts, not a universal or even a general equity jurisdiction, but only a limited and selected portion of equity power deemed to be suited to present exigencies." *Pitcairn v. Pitcairn,* 201 Pa. 368, 372-373, 50 A. 963 (1902). "The absence of a remedy which only a statute can confer does not empower equity to assume jurisdiction and supply the deficiency without a statute." *Gunnett v. Trout,* 380 Pa. 504, 509, 112 A. 2d 333, 336 (1955).

---

[1] For an excellent discussion of the history of chancery powers in Pennsylvania, *see: Penn Anthracite Mining Co. v. Anthracite Miners of Pennsylvania,* 318 Pa. 401, 178 A. 291 (1935).

The lower court here has exceeded its jurisdiction, because the jurisdiction to force school teachers and a school district into binding arbitration has never been legislatively conferred upon the courts of Pennsylvania. It is clear that public employe labor relations are to be controlled by Act No. 195, but neither this Act, nor any other, gives courts the power to impose binding arbitration in labor disputes involving school teachers. Section 804 of Act No. 195, 43 P.S. §1101.804 does permit the parties to submit their dispute to binding arbitration voluntarily, but they are in no way required to do so.

The Association has argued that, once the District invoked the lower court's jurisdiction under Section 1003 of Act No. 195, the court thereafter had the power to impose any equitable remedy it thought proper to settle the dispute. It is clear from a reading of Section 1003, however, that the court is empowered thereby to grant equitable relief only to end a public employes' strike. For the court to have any further equity jurisdiction in such a labor dispute, there would have to be a further statutory grant. There is, however, no statutory provision whatever for such extended jurisdiction.

It is true that cases such as *Ritzman* and *Myers, supra,* hold that equity may intervene where a school board has abused its discretion, been guilty of an error, misapplied a law or acted in an arbitrary manner. But even then jurisdiction is limited. As pointed out in *Myers* a court in equity cannot devise a remedy which is inconsistent with existing legislation. The lower court in the instant case found that the District had failed to negotiate in good faith and that it seemed intent on prolonging the dispute. We are not prepared to quarrel with such a finding, but we cannot find, on our own part, that it supports the imposition of a remedy which is clearly not available under the law.

The lower court has taken jurisdiction here where none has been provided by legislation, and where, in fact, Section 1401 of Act No. 195, 43 P.S. §1101.1401, specifically gives jurisdiction in a dispute involving unfair labor practices to the Pennsylvania Labor Relations Board. Where a labor dispute exists between school teachers and a school district, the equity jurisdiction of the courts of common pleas runs only to the ending of any strike which might occur; it does not permit the judicial imposition of a settlement.

For these reasons, we must reverse the order of the lower court.