542 A.2d 1047

Armstrong Education Association, Appellant *v.* Armstrong School District, a second class school district, Appellee.

Armstrong School District, a second class school district, Appellant *v.* Armstrong Education Association, Appellee.

Armstrong Education Association, Appellant *v.* Armstrong School District, a second class school district, Appellee.

572

Argued March 23, 1988, to President Judge CRUM-LISH, JR., and Judges CRAIG, MACPHAIL, COLINS, PALLADINO, McGINLEY and SMITH.

*William K. Eckel,* for Armstrong Education Association.

*C. Arthur Dimond,* with him, *John B. Bechtol, Steven P. Fulton and Joseph T. Moran, Reed, Smith, Shaw & McClay,* for Armstrong School District.

*William Fearen,* with him, *Michael I. Leven, Steven A. Stine, Cleckner and Fearen,* Pennsylvania School Boards Association, Amicus Curiae.

OPINION BY JUDGE MACPHAIL, June 6, 1988:

Before us are consolidated appeals pertaining to a teachers' strike in Armstrong County. The Court of Common Pleas of Armstrong County had ordered striking teachers to return to work; the Armstrong Education Association (Association) appeals that order. The court also directed, in a separate order, that the parties continue collective bargaining and to this end it established a schedule of required daily bargaining sessions of a pre-determined length.[1] The Armstrong School District (District) appeals from that order.

The trial court made the following findings. The District has 8,200 students, approximately 500 of which participate in special education programs. There are 512 professional employees who comprise the relevant collective bargaining unit. The District initially adopted a calendar for the 1986-87 school year providing for school to begin on September 3, 1986 and further providing for 180 instructional days on or before June 30, 1987. The Association commenced a work stoppage on

---

[1] The trial court's original order directed that daily bargaining sessions of at least ten hours be conducted and that a majority of school board members attend these sessions. Upon petition, the court modified its order and deferred to the State mediator as to the scheduling of meetings and the individuals required to attend them but, the order also required daily negotiating sessions of 6 hours and 12 hours on weekends with all school board members to be in attendance. This was the order in effect when Armstrong School District filed its appeal to this Court. After the appeal was filed, the trial court further amended its original order by empowering the mediator to alter the duration of mandatory daily sessions but still requiring negotiating sessions of a minimum of 3 hours each weekday and 6 hours each weekend.

September 3, 1986 through October 7, 1986, which resulted in the loss of 24 instructional days. The Association's members then returned to work. On January 5, 1987, the work stoppage resumed and the District sought injunctive relief.

The trial court determined that high school seniors were receiving instruction by supervisory employees but that it was deficient in quality; that high school seniors would be disadvantaged in applying to programs of higher education; that they would graduate too late to be admitted to summer school; that grades K-11 were receiving no instruction; that students in grades K-11 were subjected to the possibility of repeating a grade or receiving inadequate instruction in preparation for the next higher grade; that special education students would be adversely affected and that they were particularly vulnerable to interruption in their learning processes; that school lunch benefits would be lost to needy students; and that families with two working parents or one-parent families would be economically disadvantaged by the need to engage babysitters.

The trial court also found that as of January 9, 1987, 29 school days had been lost because of the strike and that if every available day between Monday, January 12, 1987 and June 30, 1987 were utilized (excluding Saturdays, Sundays, and Memorial Day) it would be possible to hold 180 days of instruction assuming no further loss of time due to snow or other emergencies.

The court also noted that Section 1501 of the Public School Code of 1949,[2] 24 P.S. §15-1501, mandates that schools be kept open for at least 180 days of pupil instruction and that the Legislature has not authorized a reduction in instructional days due to a work stoppage. According to the trial court's findings, the District was

---

[2] Act of March 10, 1949, P.L. 30, *as amended.*

facing the loss, irretrievably, of approximately $73,000.00 in state subsidy payments for each day after January 9 that the work stoppage continued. The court also found, however, that there would be no net loss because the District would save between $90,000.00 and $98,000.00 in daily expenditures. Based upon these findings, it determined that a clear and present danger existed and, accordingly, ordered the Association's members to return to work. The present appeals thus ensued.

It is well settled that a trial court may order striking teachers back to work only when it finds that a clear and present danger exists or that there is a threat to the health, safety or welfare of the public. Section 1003 of the Public Employe Relations Act (PERA),[3] 43 P.S. §1101.1003; *Bristol Township Education Association v. School District of Bristol Township,* 14 Pa. Commonwealth Ct. 463, 322 A.2d 767 (1974). Our scope of review on appeal is limited to determining whether or not apparently reasonable grounds existed for the equitable relief ordered by the lower court. *Bristol.* Unless it is clear that no such grounds existed or that the rules of law relied upon were palpably wrong or clearly erroneous, we must affirm. *Id.*

We, of course, recognize that the school strike has been settled and that the issues raised here are now moot. But, we have previously indicated on facts similar to these that because a situation involving a school strike and a request for injunctive relief is capable of repetition, yet evading review, we would reach the merits. *See Jersey Shore Education Association v. Jersey Shore Area School District,* 99 Pa. Commonwealth Ct. 163, 512 A.2d 805 (1986), *petition for allowance of appeal granted,* 514 Pa. 650, 524 A.2d 496 (1987).

---

[3] Act of July 23, 1970, P.L. 563, *as amended.*

In *Jersey Shore*, the lower court entered an injunction and directed teachers to return to work, despite the availability of six snow days which could be utilized before the District dropped below the 180-day requirement. *See id.* at 169-70, 512 A.2d at 808 (DOYLE, J., dissenting). In affirming the trial court, we relied upon *Armstrong School District v. Armstrong Education Association*, 5 Pa. Commonwealth Ct. 378, 291 A.2d 120 (1972), wherein we indicated that the danger that a school district might lose state subsidies due to a strike would be proper grounds for enjoining the strike if the danger were "clear and present." We further indicated that if the strike lasted so long that its continuation would make it unlikely that 180 instructional days could be offered, the teachers would properly be enjoined from continuing it. We believe that under *Armstrong* and *Jersey Shore*, the trial court was permitted to issue the injunction.[4]

The second question concerns the trial court's mandate that bargaining continue, for, even if the issuance of the injunction was proper, its scope must still be reviewed. *Bristol*. The District takes the position that the trial court's power is limited to granting the injunction and that by ordering bargaining to continue and by dictating bargaining hours and compelling school board members' presence, the trial court exceeded its authority and violated various rights of school board members. Preliminarily, we must again acknowledge the mootness of this issue, but we are convinced of its recurring nature.[5] Hence, we shall consider it. *Jersey Shore*.

---

[4] Many of the trial court's other findings are the type which we have previously characterized as demonstrating an inconvenience and they do not *necessarily* constitute a clear and present danger as envisioned by the Legislature. *See Jersey Shore*, 99 Pa. Commonwealth Ct. at 167 n.2, 512 A.2d at 806 n.2; *Bristol*.

[5] The Pennsylvania School Boards Association has filed an amicus brief in which they indicate twenty-six instances between

It is certain that Section 1003 of PERA does not expressly authorize a trial court to order parties to bargain. Rather, under that section its express power is limited only to granting an injunction. Further, it is established that in Pennsylvania, courts of equity may exercise only those equitable powers expressly conferred by the Legislature. *Bethel Park School District v. Bethel Park Federation of Teachers*, 51 Pa. Commonwealth Ct. 104, 414 A.2d 145 (1980); *Armstrong School District v. Armstrong Education Association*, 5 Pa. Commonwealth Ct. 387, 291 A.2d 125 (1972). Thus, a trial court may act to end a strike but cannot impose a judicial settlement upon the parties. *Bethel Park; Armstrong.* We, therefore, reversed the court's order in *Bethel Park* to the extent it conditioned the order upon the parties' returning under the conditions of the previously expired contract. *Accord. Bristol; Armstrong* (trial court acted beyond its authority in ordering binding arbitration).

Moreover, were we to permit the trial court's order to stand, we would be usurping the authority which the Legislature has expressly granted to the Pennsylvania Labor Relations Board (PLRB). Where there is an allegation that a party is refusing to bargain in good faith an unfair labor practice may be filed with the PLRB. *See* Section 1201(a)(5) of PERA, 43 P.S. §1101.1201(a)(5). The PLRB's authority over such actions is, by statute, exclusive. Section 1301 of PERA, 43 P.S. §1101.1301. The PLRB may then petition the trial court for relief. Section 1401 of PERA, 43 P.S. §1101.1401. No such petition was before the trial court here. Accordingly, when it attempted to supervise the bargaining arrangements it impermissibly intruded into the PLRB's jurisdictional province.

---

the 1978-79 school year and the 1986-87 school year where school districts have been subjected to orders requiring them to bargain as a condition to enjoining a teachers' strike.

*School District of the Borough of Aliquippa v. Pennsylvania State Education Association,* 33 Pa. Commonwealth Ct. 202, 381 A.2d 1005 (1977), upon which the Association relies, is not helpful. That case held only that the fact that the trial judge had attached conditions to a back to work order was not grounds for granting a supersedeas, a form of extraordinary relief. Having reviewed the relevant case law and PERA, we must, thus, conclude that the order directing negotiation to continue and establishing the specifics for such negotiation was improper.[6]

Based upon the foregoing opinion, the order directing that the Association members return to work is affirmed. The order directing that negotiations continue is reversed.

## ORDER

The order of the Court of Common Pleas of Armstrong County which directed the Association members to return to work is affirmed. Further, it is ordered that the trial court's order (and its subsequent modification) which directed negotiations to continue, ordered school district members to be present at such negotiations, and established negotiation schedules is reversed.

Judge McGINLEY dissents.

---

[6] Having disposed the issue on this basis, we need not consider the District's other arguments.

---

DISSENTING OPINION BY JUDGE CRAIG:

A dissenting opinion, by this member of the court, in *Jersey Shore Education Association v. Jersey Shore Area School District,* 99 Pa. Commonwealth Ct. 163, 512 A.2d 805 (1986), petition for allowance of appeal granted, 514 Pa. 650, 524 A.2d 496 (1987), expressed disagreement with the conclusion that the prospect of

state subsidy loss, alone, could constitute sufficient ground for enjoining a strike of the sort involved in this case. However, on that point, the premise of the majority opinion in this case now constitutes the law of this court, unless and until it might be overturned on appeal. Therefore, each member of this court must recognize that premise as the interpretation of the law which governs this case with respect to the grounds for enjoining a strike.

However, if one takes the injunction sending the teachers back to work to be legally well founded, this court should uphold the trial court's concomitant mandate requiring bargaining to continue. The power to issue an injunction necessarily involves the power and duty to mold that injunction as may be appropriate to mitigate injury to the party subjected to the injunction. 15 Standard Pa. Practice 2d §83:190.

If this court interprets the law as authorizing an injunction requiring teachers to work but, at the same time, as prohibiting judicial assurance that bargaining shall continue, this court goes contrary to the Public Employe Relations Act's interrelated goals—requiring public employers to bargain, as well as resolving injurious disputes. Section 101 of that Act, the Act of July 23, 1970, P.L. 563, 43 P.S. §1101.101.

If the members of the bargaining unit must continue working as a consequence of a back-to-work injunction, that nullification of the strike as a bargaining element properly should be balanced by assurance that bargaining shall continue.

Although the remedy of pursuing an unfair labor practice charge with the Pennsylvania Labor Relations Board is admittedly available, it is necessarily temporally remote in its availability. The trial judge, acting as equity chancellor, possesses immediate and full knowledge of the situation as a consequence of the injunction proceedings and the hearing within those proceedings.

This court would do no violence to the jurisdiction of the PLRB by recognizing that the trial judge has a responsibility to insure that the period during which the injunction is needed shall be as brief as possible, and the only way that the trial judge can effectuate that goal is by balancing the injunction with the requirement that bargaining continue.

Otherwise, the issuance of the injunction carries with it a temptation to cease bargaining for the time being, or at least to slow its pace.

In upholding a labor injunction in a case of the present kind, this court should permit the injunction to remain within a bargaining context by affirming the entire order, not just one side of it.

Judge COLINS joins this dissent.