## Gulnac v. South Butler County School District

William D. Kemper, Richard W. Givan and Gwilym A. Price III, for plaintiffs.

Robert W. Beilstein, Patrick J. Clair and Harry K. McNamee, for defendant South Butler County School District.

William J. Maikovich, for defendant South Butler County Education Association.

BRYDON, J., June 9, 1989 — In this case the court must decide the constitutionality of a teacher's limited right to strike in conjunction with the constitutional mandate that the state legislature "provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the commonwealth." Pa. Constitution, Article III, section 14. (emphasis supplied) Since this court, as shall be detailed below, is not persuaded that sufficient statutory provisions are provided to aid in the termination of teacher strikes,

once initiated, the allowance of such strikes is deemed unconstitutional until such time as additional provisions or strike alternatives are provided.

The General Assembly fulfilled its constitutional obligation by adopting the Public School Code of 1949 as amended. The public school system is governed by this voluminous School Code, as well as regulations promulgated by the Pennsylvania Department of Education. Under the provisions of the code and the regulations a local board of school directors operates the public school system within each school district. Prior to July 23, 1970 a strike by teachers, as well as other professionals employed by the school, was contrary to public policy and illegal. On that date, the General Assembly of the Commonwealth of Pennsylvania enacted P.L. 563, 43 P.S. § 1101.010 et seq., commonly known as the "Public Employee Relations Act (PERA)," 43 P.S. § 1101.201. The PERA established rights in public employees, including teachers and similar professional employees, to organize and bargain collectively through selected representatives. After exhausting the compulsory mediation (43 P.S. § 1101.801) and fact-finding measures (43 P.S. § 1101.802) provided in the act, most public employees are allowed to strike.

As emphasized above, it is constitutionally mandated that the legislature not only provide for a thorough and efficient system of public education, but also to provide for its maintenance. To this end, the legislature must provide adequate measures to bring a teacher work stoppage to a conclusion. Only one statutory provision within the PERA provides for such a result. In pertinent part, 43 P.S. § 1101.1003 provides:

"If a strike by public employees occurs . . . it shall not be prohibited unless or until such a strike

creates a clear and present danger or threat to the health, safety or welfare of the public. In such cases the public employer shall initiate, in the court of common pleas of the jurisdiction where such strike occurs, an aciton for equitable relief, including but not limited to, appropriate injunctions and shall be entitled to such relief if the court finds that the strike creates a clear and present danger or threat to the health, safety, or welfare of the public. . . . "

In effect this section of the PERA allows a party to the labor dispute to determine when a clear and present danger exists and ignores the rights of school children who are undoubtedly affected by a prolonged work stoppage. It is the opinion of this court that to allow an interested party to determine when judicial intervention is needed in a labor dispute directly conflicts with the consititutional requirement that a thorough and efficient system of public education be provided to the citizenry.

The inefficiency of this provision is aptly demonstrated by a brief review of the factual history of the present case. In January 1988, contract negotiations began between the South Butler County School District and the exclusive bargaining agent for the teaching professional employees, the South Butler County Education Association (SBCEA). The efforts to achieve a collective bargaining agreement according to the appropriate provisions of the PERA proved unsuccessful and on January 16, 1989, members of the SBCEA began a work stoppage in the district. At a special meeting of the school board on February 16, 1989, the board members stated that they did not intend to seek an injunction which would compel the teachers to return to work, even though, as of February 21, the students in the district would not be able to obtain the 180 days of instruction mandated by the Public School Code, 24 Pa.C.S. §15-1501.

On February 19, 1989, a complaint in equity was filed by several district students and their parents, seeking declaratory and injunctive relief in the form of a court order directing the teachers to return to work and a declaration as to the constitutionality of section 1003 of the PERA. On February 21, 1989, defendant district, as well as the SBCEA, filed preliminary objections asserting, inter alia, that plaintiffs lacked standing to seek such equitable relief. On that same day, plaintiffs were allowed to amend their complaint in the form of a request for mandamus, requesting the court to direct the district through its school board to in turn seek an injunction against the SBCEA in accordance with section 1003 of the PERA. By order of court dated February 27, 1989, defendant's preliminary objections were dismissed. On March 7, 1989, a rule nisi was issued by the court which made a temporary ruling that that portion of Act 195 (PERA) that grants teachers the limited right to strike was unconstitutional and a final hearing on the matter was scheduled for April 12, 1989. The following day the court entered an order, finding that it was without authority, under the provisions of the PERA, to grant plaintiffs injunctive relief but noted that their mandamus request was still pending. The teachers are presently back to work in the South Butler County School District while negotiations between the two parties continue.

As clearly evidenced by the facts set forth above, requiring school students, who are adversely affected by a strike, to go into court to seek mandamus to require a school district to seek an injunction against the district's striking teachers, is an exercise in inefficiency. The collective bargaining process would prove more effective if the "beneficiaries" of these negotiations, the students who are

to receive an education, by and through their parents, would have some input as to when a clear and present danger exists. Almost 12 years ago, the Honorable George P. Kiester, then president judge of the Court of Common Pleas of Butler County, held that that portion of the PERA legalizing strikes by public school teachers was unconstitutional. This opinion discussed the effect of a school strike on students who look to their teachers as role models. Every word of the opinion still holds true today and it is, therefore, incorporated into the present opinion.[*] Since Judge Kiester's declaration was found to be improvident upon appeal, the school children of this state have continued to fear a possible disruption of their educational experience. Not only is the child's education disrupted by a teacher's strike, but the students must also witness the actions of their teachers outside the classroom while on the picket lines. Such conduct often results in tirades of emotion and the role model for the child is shattered. This behavior was aptly demonstrated by the testimony in this case.

The fate of the children of this commonwealth's future can no longer depend on the discretion of the school board in seeking an injunction. The school board should seek an injunction when it is in the best interest of the school children; it should not be manipulated as a bargaining chip when negotiating with the teachers and other professional employees. As previously stated, section 15-1501 of the Public School Code, *supra,* requires 180 days of instruction for school pupils. This section also does not, albeit indirectly, provide for the maintenance of a thorough

---

[*] The opinion in *Butler Area School District v. Butler Education Association* which was attached to the court's opinion has not been printed herein.

and efficient system of public education. The fact that a school district may lose state subsidies for failure to comply with this requirement, in and of itself, has been found to be insufficient by the Pennsylvania Supreme Court to constitute a clear and present danger. *Jersey Shore Area School District v. Jersey Shore Education Association,* 519 Pa. 398, 548 A.2d 1202 (1988). This would appear to indicate that a court must consider the effect of the strike on the school children. A school board lacks the proper incentive to seek an end to a strike when faced with the probable loss of state subsidies. In fact, recent case in Pennsylvania that dealt with the PERA and its consequences indicate that a net gain is realized by the school district since the lost subsidies are usually less than what the district saves by avoiding its daily expenditures. See *Armstrong Education Association v. Armstrong School District,* 116 Pa. Commw. 571, 542 A.2d 1047 (1988).

The time has come for the legislature to re-evaluate its entire statutory scheme allowing public school teachers to strike. A teacher's right to strike is in direct contravention of the constitutional mandate to establish a thorough and efficient system of public education. Other public employees, such as guards and court personnel, have been denied the right to strike but still retain their right to organize and bargain collectively. Other options are available to fine-tune the bargaining process between teachers and a school district so that prohibiting strikes by teachers and would not deny them the ability to seek improved wage and working conditions. At least one improved wage and working conditions. At least one school district has found that "final-offer" arbitration, wherein the arbitrator picks an offer of one party rather than attempt to compromise the two positions, was successful in avoiding a school

teachers' strike. See *Valley News Dispatch,* February 17, 1989, at 4. Another option which may be considered is for the state to provide a financial incentive to school districts which enter into an "early-bird contract," a contract which is completed prior to the expiration of the prior contract. See comment, *Enjoining a Teachers' Strike. The Difficulties in Defining the Clear and Present Danger Standard,* 27 Duq. L. Rev. 583 (1989).

The onslaught of teachers' strikes in Pennsylvania has got to stop — too many students are adversely affected each year. While the appropriate provisions of Act 195 (the PERA) provide for the limited right of teachers to strike, it does not provide adequate or effective measures to bring such a strike to an end. Under the present provisions of the PERA, the state legislature does not provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of this commonwealth. Thus, the teachers' limited right to strike provided by section 1003 of the Public Employee Relations Act is held unconstitutional.

## ORDER OF COURT

And now, June 9, 1989, after due consideration and in conformance with the foregoing memorandum opinion, this court's temporary ruling, dated March 7, 1989, declaring that portion of Act 195, the Public Employee Relations Act, which grants teachers the limited right to strike, namely 43 P.S. §1101.1003, unconstitutional is hereby reaffirmed in toto and made a final order of this court.