# Roth *against* M'Clelland.

A court of chancery is alone competent to determine whether a condition imposed by its interlocutory decree has been performed. A court of law in a collateral proceeding cannot inquire into it; much less would it have power to pronounce the requirements of a decree in chancery to be satisfied by equivalents.

ERROR to the common pleas of *Adams* county.

This was an action of ejectment by David Roth against William M'Clelland, for a tract of land in Liberty township, Adams county, containing one hundred and fifty acres, with a grist mill, saw mill, oil mill, and plaster mill erected upon it.

The title to the land was admitted to have been in Jacob Roth,

and the plaintiff gave in evidence, a deed dated the 4th of August 1823, from Jacob Roth to David Roth, and rested his cause.

The defendant gave in evidence the record of an action of covenant, in the circuit court of the United States, and proceedings upon it, and of a bill in equity in the same court, as follows:

Isaac, Henry, and Jacob Darst against Jacob Roth. October term 1823. Covenant. On the 27th of October 1824, judgment for 5519 dollars 44 cents. *Fieri facias* to April term 1825, levied on lands of Jacob Roth, which were condemned. (The land now in dispute.) *Venditioni exponas* to October term 1825. *Alias fieri facias*, 30th of July 1831. *Venditioni exponas* to April term 1832. *Alias venditioni exponas* to October term 1832, which was returned land sold to Isaac Darst for 2700 dollars.

Isaac Darst against Jacob Roth and David Roth. Circuit court of the United States, bill in equity filed on the 7th of August 1828. On the 6th of June 1831, decree of the court as follows:

" This cause came to be heard on the bill, answers, and replications, and the court having seen and heard the exhibits and evidence in the cause, and heard the arguments of the counsel, and having fully deliberated thereon, reserving to themselves the right of hereafter making such further and final decree as they may deem right, do decree, that there is due on the judgment of Isaac Darst, Henry Darst, and Jacob Darst against Jacob Roth, the sum of 7618 dollars 76 cents. And on the covenant between them and not included in the judgment, the sum of 714 dollars 17 cents. And for costs 140 dollars without interest on said costs, amounting in the aggregate, to the sum of 8472 dollars 93 cents.

" And the court do further order and direct, that the sale and deed from the marshal to the complainant, Isaac Darst, for lands in Adams county, be annulled and set aside at the cost of the complainant, and that the complainant have leave to take out an alias execution on said judgment, and levy the same on the tract of land in Adams county, conveyed by said Jacob Roth to David Roth, and proceed therein according to law. That the said Jacob and David Roth, on or before the first day of the next term, pay to the clerk of this court, on account of the said judgment and debt, the sum of 2846 dollars 96 cents, with interest on the same, from the 21st of May 1831, with costs of suit to be taxed. No interest on 140 dollars of costs. In default whereof, on the part of the said Jacob and David, the court do order and decree, that the deed from Jacob Roth to David Roth, recited in the bill of the complainant, be set aside as fraudulent, null, and void."

On the 6th of June 1832, complainant's attorney entered a *remittitur* as to David Roth, of 570 dollars, 84 cents.

The defendant then gave in evidence, the marshal's deed for the land in dispute, to Isaac Darst, dated 24th of November 1832, and that he claimed under it.

The plaintiff then resumed, and offered to prove, that in the be-

[Roth v. M'Clelland.]

ginning of October 1831, David Roth raised the amount of money decreed to be paid by him, and went to Philadelphia, and made the offer to pay the same to Darst's attorney, on the decree; that said attorney refused to accept it *specifically*, on the sum thus decreed against David, but offered to receive it generally, on the judgment against Jacob Roth; and in furtherance of said proof, and to show subsequent offers to pay the sum decreed against plaintiff, before the sale of the property now in controversy, offers the depositions of Michael W. Ash, &c.

" M. W. Ash being sworn, saith, that on the 22d of March 1832, he read to Charles Wheeler, Esq. attorney at law, of the city of Philadelphia, the paper hereto annexed, marked (A.) and that said Charles Wheeler, refused to accept the offer contained in said paper.  Deponent further saith, that the said Charles Wheeler acted as one of the counsel for Darst *v.* Roth, in the circuit court of the United States for the eastern district of Pennsylvania, and further saith not."

" Charles Wheeler, Esq., attended on behalf of William M'Clellan, and at first declined asking deponent any questions.  Deponent signed the deposition; but afterwards he asked deponent if, at the time he made the offer to him, he had any money in his possession belonging to Roth; to which deponent answers, that he had not any. He further says, he does not know where Roth was at that time, but he believes he was in Adams county."

Mr. Wheeler subsequently returned this answer in writing: " The Adams county farm will not be released on the payment of the particular amount specially assessed on it in relation to David Roth, but a credit will of course be allowed for it on the judgment.

All the evidence of the plaintiff was objected to by the defendant, and rejected by the court, who sealed a bill of exceptions.

The plaintiff renewed the offer of the same evidence, accompanied with a tender of the money, brought into court for the purpose of payment.  This being objected to, was also rejected, and the court sealed a second bill of exceptions.

By direction of the court (Durkee, president) the jury rendered a verdict for the defendant.

*Stevens* and *Penrose*, for plaintiff in error, cited 1 *Binn.* 469; 16 *Serg. & Rawle* 368; 9 *Serg. & Rawle*, 212; 1 *Mad. Ch.* 35.

*Hambly*, for defendant in error.  The testimony was illegal, and properly rejected by the court below, as it neither tended to show a compliance with the decree, nor a reason for non-compliance.

The offer proposed to be proved, is not an offer, but a mere proposition.  Darst's attorney had no authority to receive the money, neither had Darst himself, though I acknowledge the court would have held him bound if he had received it.  In Gable *v.* Gable, 1 *Penns. Rep.* 264, when the attorney for the party had received the

[Roth v. M'Clelland.]

money, the court did not hold the party bound by it. If Roth had, upon the refusal of Darst's attorney to receive, then gone into court and paid in the money, they would have released him. It is however too late upon the trial below, to attach a title which he has himself assisted in making. He was a party to these proceedings in Chancery, was the respondent, one of the defendants, and an execution, issued from the law side by direction of equity side, made him a defendant in effect, and a party to the proceedings under which the title was made, which he is now attaching.

Roth, however, is now too late; he has failed to seek his remedy at the proper time, and in the proper place. His application should have been to the circuit court. In Gable *v.* Gable, and in Hollingsworth *v.* Fry, 4 *Dal.* 345, it was accorded that when time was made a substantial circumstance, even a court of equity cannot interfere. The offer above was not made available at the right time and place, and the offer below is too late. He cited 10 *Johns.* 223; 3 *Wash. C. C. Rep.* 346. As to the power of the attorney to receive or reject the tender, 1 *Penns. Rep.* 264; 1 *Dall.* 345.

The opinion of the Court was delivered by

GIBSON, C. J.—The decree of the circuit court was interlocutory and conditional. The respondents were required to pay, by a given day, certain moneys into court to the credit of the judgment on which the land in contest has since been sold; in default of which, the conveyance recited in the complainant's bill was decreed to be fraudulent and void. The object of the condition was to reach the equity of the cause without, unless as a last resort, disturbing the conveyance betwixt the parties to it. In default of performance the decree was to stand as an absolute one; but who was to judge of the fact? Certainly not a court of common law; nor indeed any other than the court which pronounced the decree, for none else had jurisdiction of it. Had the condition been performed to the letter, it would still have required its intervention to restrain proceedings on the judgment against the land in contest. What did the defendant in this ejectment offer to prove? Not a tender of payment in the terms of the decree, but a tender to the complainant's solicitor who claimed to receive it, not as a compliance with the decree and consequent exoneration of the particular land, but as a general payment in case of all the lands bound. The pretension of the solicitor was unjust; but why did not the respondent pay directly to the clerk without consulting the solicitor whose sanction was immaterial? His course was a clear one. Payment into court would have given life to his conveyance without the concurrence of any one; and the court, being satisfied of the fact, would have enjoined from execution of the particular land. Further action by the court was indicated not only by the terms of the decree but by the requirements of the occasion. But the defendant did not offer to prove even a tender of performance

[Roth v. M'Clelland.]

which could be made only by an offer to pay directly into court, such being the terms of the decree; and had there been even actual performance, it would still have rested with the court to make such further order as would have been requisite for the security of the title. Opposed to it we have a conveyance pursuant to a sale on a judgment and execution entirely regular at law, against which there can be no legal defence; and who is to say whether the plaintiff ought to have been enjoined? A court of chancery is not only the best, but the exclusive, tribunal to determine whether a condition imposed by it has been performed; and we cannot say what it might or would do in a case like the present, nor pronounce its requirements satisfied by equivalents. In fine, it was a matter with which no other court had to do, or can now interfere. We have no choice, therefore, but to consider the conveyance as definitively set aside, and the title as sold on the execution of a court, into the legality of whose process we have not a right to inquire. The case is an extremely hard one, by reason of the encouragement given to the defendant's error by the unwarrantable pretension of the solicitor; but if relief be attainable at all, it can be had only from the court which pronounced the decree, and not from a court of law in a collateral proceeding.

Judgment affirmed.