Calantzis *v.* Collins, Appellant.

Argued October 3, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

*James W. Daub,* for appellant.

*Tasso E. Camarinos,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, October 9, 1970:

Appellant sought, in the court below, the discharge of a guardian ad litem appointed for her. The chancellor refused to discharge the guardian and upon the dismissal of exceptions by the court en banc and the entry of a final decree, an appeal to this court was filed.

The factual and procedural history of this case is concisely summarized in the opinion of the trial court as follows: "Catherine Collins is a seventy-three year old widow, having emigrated from Greece to Canada in 1909 at the age of fourteen. Her education consists of attendance at school in Greece for four years. In

1914 she married Peter Calantzis, also known as Peter Collins. After the marriage in Canada they moved to Pittsburgh in 1917 and later to Franklin, Pennsylvania. Peter Collins died in 1951, a resident of Venango County, Penna. His will was admitted to probate in the Office of the Register of Wills of Venango County, Pennsylvania, at No. 64 March Term, 1956. By his will, Mr. Collins devised his estate to his four nephews in Greece, the plaintiffs in this action. Defendant elected to take against the will of her deceased husband.

"Among the assets in the decedent's estate is a valuable tenement building at the northeast corner of Forbes and Craig Streets, Pittsburgh, Pennsylvania. This is known as the Collins Building. The address is No. 4175 Craig and Nos. 4601-4603 Forbes Avenue.

"As a result of her election, Catherine Collins became seized of an undivided one-half interest in this property. The other one-half interest is vested in the plaintiffs herein.

"Plaintiffs commenced this action in partition on November 2, 1961. On February 3, 1963, an agreement was entered into among the parties hereto. Based on this agreement a decree of court was entered February 7, 1963. Presumably this concluded the matter.

"The Agreement and Decree called for a division of the net rentals among the parties in accordance with the respective interests. Oakland Realty Company, a firm doing business in the vicinity of the subject property, was designated as rental agent for the premises. This was done with the consent of all parties.

"Instead of allowing the Realty Company to manage the property, Catherine Collins herself assumed this function. She collected rents, signed leases and ordered repairs.

"At the age of 73, having had little formal education, all of which was gained in Greece, Mrs. Collins is not

equipped to carry on any type of commercial activity in a modern American city. The facts bear out this conclusion. Mrs. Collins kept no account of her stewardship. She had no receipts for repair bills paid, no account of rents collected, taxes paid or repairs ordered.

"When the Greek co-owners learned of this state of affairs, they sent a representative to Pittsburgh to see what could be done to remedy the situation. By Court Order filed May 18, 1967, Mrs. Collins was cited to file an account. A hearing on this matter was held on May 31, 1967. At this, Mrs. Collins was totally uncooperative. She failed to realize her obligations to keep records and to account to her co-owners. This Court, by Order of June 5, 1967, again designated Oakland Realty Company as manager of the property and directed Mrs. Collins to cease interfering with this arrangement. At this hearing the representative of the plaintiffs' interest was most cooperative. He disclaimed any intention in suing defendant for past defalcations. He stated that he and his co-owners in Europe are more interested in Mrs. Collins' personal well-being than in their own financial interest. The latter is relatively small per person when compared with hers.

"Mrs. Collins refused to comply with the Court Order. Again she negotiated leases, collected rents and ordered repairs. She paid taxes, on at least one occasion paying taxes that had been paid by the agent. She was cited for contempt of Court. Following a hearing on July 27, 1967, this Court appointed Robert Grigsby, Esquire, as Guardian ad litem, pursuant to the provisions of Pa. R. C. P. 2051 et seq., particularly Rule 2056."

Initially, appellant complains that the agreement of February, 1963, entered as an order of court, terminated the partition proceedings and that the court, therefore, had no further jurisdiction over the parties and the cause of action. We do not agree with this contention.

The matter is in its present posture because appellees sought the assistance of the court in the enforcement of the February, 1963, decree, which decree they averred was being violated by appellant. We recently addressed ourselves to a similar contention in *Advanced Management Research v. Emmanuel*, 439 Pa. 385, 266 A. 2d 673 (1970), and rejected it. The discontinuance of the action, based on a decree requiring a performance of a series of acts does not oust the court of its jurisdiction to see to the enforcement of that decree. For the same reason, appellant's argument that there was no pending litigation and that the court, therefore, had no power to appoint a guardian ad litem, is without merit.

Appellant further complains that the trial court erred in failing to file an adjudication, as required by the equity rules. We agree with the court below that no such procedure was required. The appointment of a guardian ad litem resulted, not from a complaint in equity, answer and hearing, but rather from a petition seeking the enforcement of a decree previously entered. In such circumstances, we do not believe that the rules require an adjudication as contemplated by the equity rules. Under the posture of this record, *Community Sports, Inc. v. Oakland Oaks*, 429 Pa. 412, 240 A. 2d 491 (1968), is not applicable.

Appellant next argues that the decree was entered prematurely, inasmuch as it was filed before appellees filed their brief. We fail to discern how appellant was thereby prejudiced. The court had directed counsel to submit briefs and counsel for appellant had complied. The court, without waiting for appellees' brief, filed its opinion dismissing the petition to remove the guardian ad litem. Briefs are, of course, but an aid to the court and appellant could only benefit, not suffer, by appellees' failure to furnish any assistance to the court in reaching its decision.

Appellant's other assignments of error present considerably more difficulty. She contends that she established her competency by medical evidence that she is not an habitual drunkard, a weak-minded person or a person of unsound mind, and that even if that were not the case, the court went too far in granting the guardian ad litem the power to do anything other than to supervise and control the conduct of the action.

Rule 2051 Pennsylvania Rules of Civil Procedure defines an incompetent as "a person who has a guardian or who is found by the court in the pending action to be an habitual drunkard, or a weak-minded person or a person of unsound mind." Rule 2053 provides for the appointment of a guardian ad litem for an incompetent defendant, which guardian ad litem "shall supervise and control the conduct of the action in [the incompetent's] behalf."

We are in agreement with the court below that: "In this case there is no issue concerning the term 'habitual drunkard', nor is Mrs. Collins a 'person of unsound mind.' However, definitions of the term 'weak-minded' often contain as one synonym 'incompetent.' Ryman's Case, 139 Pa. Superior Ct. 212, 11 A. 2d 677 (1940). We find that Mrs. Collins falls within the rule authorizing the appointment of a guardian ad litem for one not competent to participate in this judicial proceeding. The facts presented, as well as her own actions, clearly illustrate her inability to comprehend this judicial proceeding." The court, however, continues by saying that "Mr. Grigsby is not a general guardian but only a guardian ad litem. His duties as such will end when the case at Bar is terminated." While Mr. Grigsby's duties will surely end upon the conclusion of the litigation, it appears that he is functioning under the court's order as more than a guardian ad litem.

The guardian ad litem has received and disbursed funds on appellant's behalf and has in general acted as the guardian of her estate. At the hearing held January 5, 1968, he testified that he had received since his appointment $3,999 and disbursed $2,000, leaving a balance of $1,999 on deposit with a Pittsburgh bank. We do not believe that such procedure is authorized by law.

The Incompetents' Estates Act confers exclusive jurisdiction over the property and estate of incompetents on the Orphans' Court, after an adjudication of incompetency and the appointment of a guardian. While appellant may well be determined to be incompetent with respect to the particular complex of litigation which underlies the instant appeal, and therefore requires a guardian ad litem, no adjudication of incompetency has been made such as is required for the appointment of a guardian of the estate, even if such a proceeding had been commenced in the proper forum.

The Rules of Civil Procedure authorize the guardian ad litem to supervise and control the conduct of the litigation. No provision is made in the rules for entrusting a guardian ad litem with the care and management of the property of the incompetent even where, as here, the fund which he is administering arises from the very subject matter of the litigation. Such administration can only be conducted by a guardian of the estate appointed by a court of competent jurisdiction, not by a guardian ad litem appointed under rules which "do not apply to proceedings to secure the appointment of a fiduciary or guardian for the person or estate of an incompetent. . . ." 4 Anderson Pa. Civil Practice 2051.1.

The many convolutions of the instant litigation make it difficult for us to determine the exact course which the court below should now follow. We are not prepared to, nor do we determine whether the original,

or a new, partition proceeding should be pursued to actual partition; whether contempt proceedings should be instituted against appellant for violation of orders of court; or whether a proper party should commence proceedings for a formal adjudication of incompetency so that appellant's property may be safeguarded, if indeed her condition requires such action. Nor do we hold that the guardian ad litem should be discharged, it being our view that the litigation has not reached finality. We do, however, hold that the guardian ad litem is not authorized to manage the estate of appellant. He should, therefore, be required to turn over such assets in his possession to appellant or to a guardian who might be appointed, and to account for his stewardship to the date of such turnover.

The decree of the court below is affirmed as herein modified, and the case is remanded for further proceedings consistent herewith. Each party is to bear own costs.