595 A.2d 1139

**ARMSTRONG SCHOOL DISTRICT, a second class school district, Appellee,**

v.

**ARMSTRONG EDUCATION ASSOCIATION, Appellant.**

Supreme Court of Pennsylvania.

Argued March 6, 1990.

Decided Aug. 12, 1991.

enforcement agency which regularly provides primary police services in the municipality.

42 Pa.C.S. 8953(c).

William K. Eckel, Johnstown, Ronald N. Watzman, Litman, Litman, Harris, Brown & Watzman, P.C., Pittsburgh, and Mary Catherine Frye and Lynne L. Wilson, Pennsylvania State Educ. Assn., Harrisburg, for appellant.

Louis B. Kushner, Alan C. Blanco and Stephen H. Jordan, Rothman, Gordon, Foreman & Groudine, P.C., Pittsburgh, for amicus curiae, Pennsylvania Federation of Teachers.

Steven P. Fulton, James Q. Harty and Walter G. Bleil, Reed, Smith, Shaw & McClay, Pittsburgh, for Armstrong School Dist.

Michael I. Levin and Frank P. Clark, Cleckner and Fearen, Abington, for amicus curiae, Pennsylvania School Boards Ass'n.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA, PAPADAKOS and CAPPY, JJ.

## OPINION

NIX, Chief Justice.

In this appeal, the Armstrong Education Association ("Teachers") appeals from the order of the Commonwealth Court which reversed an order of the Armstrong County Common Pleas Court directing the Teachers and the Armstrong School District ("District") to continue collective bargaining and scheduling negotiation sessions of predetermined length, in efforts to end a work stoppage. The issue presented is whether a court of equity has authority to require the attendance of school board members and union negotiators at bargaining sessions of a frequency and duration determined by the court under the supervision of a state mediator when the equity court has issued an injunction stopping the school strike. For the following reasons, we reverse the order of the Commonwealth Court.

The pertinent facts are as follows. On September 3, 1986, the Teachers commenced a work stoppage against the District. On October 8, 1986, the Teachers voluntarily

returned to work without a new contract. On January 5, 1987, the strike resumed and, on the same day, the District filed a complaint against the teachers pursuant to section 1003 of the Public Employee Relations Act ("PERA"), 43 Pa.S. § 1101.1003 [1], asking the Court of Common Pleas of Armstrong County to end the work stoppage by issuing an injunction. The Court ordered the Teachers to return to work under the terms of the prior agreement. The trial court conditioned the injunction upon the parties' engaging in daily negotiating sessions until an agreement was reached. The court later amended its order to require that the sessions last at least ten hours each day and that the entire Teacher's negotiating team and the School Board attend if the mediator deemed it advisable.

On appeal, the Commonwealth Court affirmed the portion of the order awarding the injunction, but reversed the portion relating to negotiation sessions. The Commonwealth Court held that the common pleas court had exceeded the scope of equitable powers granted to it by the legislature under PERA. The Commonwealth Court determined that the order directing the parties to negotiate and establishing the specifics for the negotiation was, in effect, an attempt to impose a judicial settlement. The Common-

---

1. PERA permits public employers to seek an end to employee strikes as follows:

**§ 1101.1003. Strikes after exhaustion of negotiation and mediation procedures; equitable relief in certain circumstances.**

If a strike by public employes occurs after the collective bargaining processes set forth in sections 801 and 802 of Article VII of this act have been completely utilized and exhausted, it shall not be prohibited unless or until such a strike creates a clear and present danger or threat to the health, safety or welfare of the public. In such cases the public employer shall initiate, in the court of common pleas of the jurisdiction where such strike occurs, an action for equitable relief including but not limited to appropriate injunctions and shall be entitled to such relief if the court finds that the strike creates a clear and present danger or threat to the health, safety or welfare of the public. If the strike involves Commonwealth employes, the chief legal officer of the public employer or the Attorney General where required by law shall institute an action for equitable relief in the court of common pleas of the jurisdiction where the strike has occurred or the Commonwealth Court. . . . .
(Footnote omitted.)

wealth Court reasoned that, by issuing such an order, the trial court had usurped the authority of the Pennsylvania Labor Relations Board over instances where it is alleged that a party refused to bargain in good faith in violation of Section 1201(a)(5) of PERA, 43 P.S. § 1101.1201(a)(5). *Armstrong Educ. Assn. v. Armstrong School Dist.*, 116 Pa.Commw. 571, 542 A.2d 1047 (1988).

The Teachers argue that the Commonwealth Court erred in the following respects. First, the language of PERA and its stated public policy give the trial court equitable power to direct the parties to enter settlement negotiations. Second, once a court of equity has jurisdiction the chancellor may impose reasonable regulations and conditions in order to effectuate the relief granted. And third, appellant submits once the District invoked equity jurisdiction based upon claims that the strike created a clear and present danger or threat to the health, safety, and welfare of the public, the PLRB's exclusive jurisdiction was ousted.

Conversely, the District argues that the court's equity jurisdiction ended with its ability to grant an injunction, because that is the only power expressly granted to the courts by the legislature in PERA. The District maintains that PERA requires complaints about the bargaining process be filed as unfair labor practices and handled by the PLRB.

A determination of the scope of authority of a modern equity court, while adhering to the restrictions of equity jurisdiction delineated by the legislature, must be guided by basic principles of equity jurisprudence.[2] When the court's

---

2. The historic distinction between a court of law and a court of equity is the ability of the latter tribunal to fashion a remedy based upon considerations of fairness, justness, and right dealing in a particular situation as contrasted with the strictly formulated rules of common law. The chancellor in equity was expected to consider all circumstances and interests of affected parties and was given broad discretion to effectuate a remedy reflecting an equitable balancing of those considerations. Subrin, **How Equity Conquered Common Law,** 135 U.Penn L.Rev. 909, 920 (1985). In the early days of the equity courts, bills in equity could be filed to avoid forcing a dispute into "narrow cubbyholes" and to protect a petitioner from the alleged injustice that

jurisdiction is impacted by legislation, one must first look to the statute to ascertain the purposes sought to be achieved by its enactment, and then decide how equity principles assist a court in furthering those legislative purposes.

The public policy underlying PERA is stated as follows:

### § 1101.101. Public policy

The General Assembly of the Commonwealth of Pennsylvania declares that it is the public policy of this Commonwealth and the purpose of this act to promote orderly and constructive relationships between all public employers and their employes subject, however, to the paramount right of the citizens of this Commonwealth to keep inviolate the guarantees for their health, safety and welfare. Unresolved disputes between the public employer and its employes are injurious to the public and the General Assembly is therefore aware that adequate means must be established for minimizing them and providing for their resolution. Within the limitations imposed upon the governmental processes by these rights of the public at large and recognizing that harmonious relationships are required between the public employer and its employes, the General Assembly has determined that the overall policy may best be accomplished by (1) granting the public employés the right to organize and choose freely their respresentatives; (2) requiring public employers to negotiate and bargain with employe organizations representing public employes and to enter into written agreements evidencing the result of such bargaining; and (3) establishing procedures to provide for the protection of the rights of the public employe, the public employer and the public at large.

1970, July 23, P.L. 563, No. 195, art. I, § 101, effective in 90 days. In furtherance of that policy, the court of common pleas is given the power to grant "equitable relief *including but not limited to* appropriate injunctions." 43 P.S. § 1101.1003. (Emphasis added.) This language expressly

would result from "a rigorous application of the common law." *Id.* at 918.

provides authority for the common pleas court to issue injunction decrees and, *a fortiori*, orders imposing reasonable regulations and conditions upon the injunction.

The District's first argument that the court's equity jurisdiction ended with its ability to grant an injunction because the injunction is the only power expressly granted the courts by section 1003 of PERA is patently fallacious. A reading of the language of the section of PERA the District relies upon belies the argument. As previously stated, that section permits the common pleas court to grant "equitable relief *including but not limited to* appropriate injunctions." *Id.* The plain meaning of this language is to be given effect. It clearly contemplates situations will arise wherein an injunction alone will not accomplish the goal of the legislature in enacting this statute, *i.e.*, the promotion of orderly and constructive relationships between public employers and their employes. 43 Pa.S. § 1101.101. To interpret this language as restricting a court's equitable power in this instance to the granting of injunctions *only* would yield a result that is absurd, unreasonable, and in contradiction to well established principles of statutory construction. 1 Pa.C.S. § 1922(1).

■ Moreover, the interpretation pressed by appellee would also render ineffective the court's power to grant injunctive relief. Inherently, courts sitting in equity have the power to enforce their own decrees.

> The power of a court of equity to enforce its own decrees is a necessary incident to the jurisdiction of the court. 'Without such power, a decree would in many cases be useless. "All courts [of equity] have this power, and must necessarily have it; otherwise they could not protect themselves from insult, or enforce obedience to their process. Without it they would be utterly powerless" '.... *The jurisdiction of the court continues for the purpose of enforcing the decree....* Where there is an unimpeachable final decree, contemplating the performance of a series of acts, the proceedings to enforce compliance with that decree must be through that proceeding.... *Butler Co. v. P., H., B. and N.C. Ry. Co.,*

298 Pa. 347, 350–351, 148 A. 504, 505 (1929); *Roth v. M'Clelland,* 6 Watts 68 (1837). *Advanced Management Research, Inc. v. Emanuel,* 439 Pa. 385, 391, 266 A.2d 673, 674 (1970).

*Accord, Calantzis v. Collins,* 440 Pa. 354, 269 A.2d 655 (1970); *Alpern v. Coe,* 352 Pa. 208, 42 A.2d 542 (1945); *Commonwealth ex rel. Lieberum v. Lewis,* 253 Pa. 175, 98 A. 31 (1916).

█ Manifestly, equity's power to enforce its decrees includes the power to enforce injunctions. *Knaus v. Knaus,* 387 Pa. 370, 127 A.2d 669 (1956); *Commonwealth ex rel. Lieberum v. Lewis, supra;* Pa.Rule of Civil Proc. 1529; 15 Standard Pa. Practice 2d § 83:205. The court's inherent power to issue orders necessary to enforce the decree also remains inviolate.

The District's claim that the common pleas court sitting in equity lacked jurisdiction over the bargaining process must also fail. The District agrees that section 1003 of PERA confers equity jurisdiction upon the common pleas court once a public employer seeks relief from a strike, but believes decrees regarding bargaining are within the exclusive jurisdiction of the Pennsylvania Labor Relations Board because complaints of infrequent meetings of inadequate duration during the bargaining process fall within the category of an unfair labor practice pursuant to section 1201(a)(5).[3] However, a complaint charging the District with a refusal or failure to bargain collectively was not filed. Thus section 1201 and PERA's remedies for such prohibited practices are not triggered into operation.

█ Rather, since equity had jurisdiction (at the request of the District), it will retain jurisdiction over the entire

3. § 1101.1201. **Unfair practices by public employers and employe organizations; acts prohibited**
   (a) Public employers, their agents or representatives are prohibited from:

   \* \* \* \* \* \*

   (5) Refusing to bargain collectively in good faith with an employe representative which is the exclusive representative of employes in an appropriate unit, including but not limited to the discussing of grievances with the exclusive representative.

controversy. "Where equity assumes jurisdiction for one or more purposes, it will retain jurisdiction for *all purposes* to give complete relief and to do complete justice between the parties. This may include an award of equitable relief not covered by the original prayer." (Emphasis added.) *Piercing Pagoda, Inc. v. Hoffner*, 465 Pa. 500, 351 A.2d 207 (1976) (covenant not to compete enforced despite not being mentioned in complaint) *citing Lafean v. American Caramel Co.*, 271 Pa. 276, 114 A. 622 (1921); *McGinn v. Benner*, 180 Pa. 396, 36 A. 925 (1897). *See also Cedarbrook Realty, Inc. v. Nahill*, 484 Pa. 441, 399 A.2d 374 n. 2 (1979); *46 S. 52nd Street Corp. v. Manlin*, 404 Pa. 159, 172 A.2d 154 (1961); *Nedwidek v. Nedwidek*, 371 Pa. 621, 92 A.2d 536 (1952).

As this Court stated:

'Equity is the special forum for obtaining an injunction, which may be granted to prevent actual or threatened trespasses or nuisances of a continuing and permanent character ... and, when once the jurisdiction has thus attached, equity will itself proceed to round out the whole circle of the controversy, by deciding every other contention connected with the subject matter of the suit....' *Philadelphia Gas Works Co. v. City of Philadelphia*, 331 Pa. 321, 359, 1 A.2d 156, 173 (1938). (Citation omitted.)

■ It is particularly just and proper for equity to insure that the bargaining process proceeds energetically and promptly once an injunction restraining striking has been issued. The court has an obligation to balance the equities implicated in the ambit of the controversy, which requires in this type of case the imposition of a duty upon the bargaining parties to bring resolution to the entire matter. The avoidance of multiplicity of actions, a valid jurisprudential concern, is accomplished.

Additionally, if the scope of equity's common law jurisdiction was to have been diminished by section 1003 of PERA, the language therein should have been more explicit than was employed here by the legislature. The language of

section 1003 makes no reference to a decrease in the equity court's jurisdiction and such a diminution may not be implied. Provisions decreasing the jurisdiction of a court of record must be strictly construed. 1 Pa.C.S. § 1928(b)(7). *See also, Bundy v. Belin,* 501 Pa. 255, 461 A.2d 197 (1983); *In re: Jones and Laughlin Steel Corp.,* 263 Pa.Super. 378, 398 A.2d 186 (1979), *affirmed* 488 Pa. 524, 412 A.2d 1099 (1980).

Finally, although the issue of jurisdiction may not be waived and can always be raised, *Troiani Bros., Inc. v. Commw., Pa. P.U.C.,* 488 Pa. 386, 390 n. 5, 412 A.2d 562, 564 n. 5 (1980); *Commonwealth v. Little,* 455 Pa. 163, 314 A.2d 270 (1974); *Daly v. School District of Darby Twp.,* 434 Pa. 286, 252 A.2d 638 (1967), so there is no question of estoppel involved in appellee questioning the court's jurisdiction after having initially invoked it, we look at the total controversy here and are mindful of the centuries old maxim "He who seeks equity must do equity." *Sprague v. Casey,* 520 Pa. 38, 46, 550 A.2d 184, 188 (1988).

We therefore hold that section 1003 of PERA does not reduce any of the common law jurisdiction of a court of common pleas in equity.

Accordingly, the order of the Commonwealth Court is reversed in pertinent part.

ZAPPALA, J., files a dissenting opinion.

ZAPPALA, Justice, dissenting.

I would affirm the order of the Commonwealth Court reversing the trial court's order directing the parties to continue collective bargaining and scheduling negotiation sessions.

Section 1003 of the Public Employee Relations Act ("PERA"), 43 Pa.S. § 1101.1003, provides:

If a strike by public employes occurs after the collective bargaining processes set forth in sections 801 and 802 of Article VII of this act have been completely utilized and exhausted, it shall not be prohibited unless or until such a strike creates a clear and present danger or threat to the

health, safety or welfare of the public. In such cases the public employer shall initiate, in the court of common pleas of the jurisdiction where such strike occurs, an action for equitable relief including but not limited to appropriate injunctions and shall be entitled to such relief if the court finds that the strike creates a clear and present danger or threat to the health, safety or welfare of the public. If the strike involves Commonwealth employes, the chief legal officer of the public employer or the Attorney General where required by law shall institute an action for equitable relief in the court of common pleas of the jurisdiction where the strike has occurred or the Commonwealth Court.

No common law equity jurisdiction exists in Pennsylvania. A court may exercise only those equitable powers which have been specifically conferred by the legislature. *Commonwealth v. Ryan*, 459 Pa. 148, 151, 327 A.2d 351, 354 (1974), citing *Calabrese v. Collier Township Municipal Authority*, 430 Pa. 289, 240 A.2d 544 (1968); *Armstrong School District v. Armstrong Education Association*, 5 Pa.Cmwlth. 387, 291 A.2d 125 (1972). Thus, the scope of a chancellor's jurisdiction in matters involving strikes by public employees is defined by Section 1003 of PERA.

The majority holds that section 1003 "does not reduce any of the common law jurisdiction of a court of common pleas in equity." Given its expansive view of the scope of authority of an equity court, the majority has shaped its response to the issue without deference to the detailed legislative scheme for collective bargaining. The response is visceral and invalid.

The Legislature has mandated that no strike by public employees be prohibited unless or until the strike creates a clear and present danger or threat to the health, safety, or welfare of the public. In such cases, the Act gives the right to a public employer to initiate an action for equitable relief in the common pleas court. It is significant that § 1003 is structured as an authorization for the *public employer* to seek relief from a strike, including injunctive relief. The Act does not provide an unlimited grant of authority for the

court to step in to resolve a dispute, and, notably, the public employees are given no right to approach the court for relief.

The majority seizes upon the phrase "an action for equitable relief including but not limited to appropriate injunctions" as authority for its broad interpretation of the court's role in a strike by public employees. Argument can easily be made that the phrase was intended only to clarify that injunctive relief was permitted, and not to suggest that the court has unfettered discretion to act as a super-arbitrator. Much more is at stake than a disagreement as to the meaning of the phrase, however.

The majority has lost sight of the overall scheme developed by the Legislature. Scrutiny of the Act as a whole reveals a carefully crafted balance of the rights of the public employer, public employee, and the public at large. To achieve this delicate balance, the Legislature specifically defined the roles of the arbitrators, the courts, and the Pennsylvania Labor Relations Board.

The balance is disrupted by the majority's unsupported expansion of the court's role. The majority concludes that the authority of the court must necessarily be far-reaching, fearing that any restriction on that authority would defeat it. I disagree. Section 1003 of the Act does not have to be interpreted so as to permit the court to wield power to compel attendance and to direct the hours of negotiation in order to preserve the court's authority to grant equitable relief. Negotiations require finesse, not a judicial steamroller.

Forcing individuals to appear and negotiate at specific times by court order may prove undesirable. "A major purpose of the Act is to encourage the peaceful resolution of labor disputes between public employers and their employees through orderly procedures of collective bargaining." *Commonwealth v. Ryan*, 459 Pa. at 158, 327 A.2d at 354 (footnote omitted). The court's role is only to ensure that the public is not endangered or threatened by a delay in that peaceful resolution.

There is no reason to believe that a court-imposed negotiating session will achieve what the public employer and public employes have not. The common pleas court may act only to end a strike, not to impose a judicial settlement. *Bristol Township Education Association v. School District of Bristol Township*, 14 Pa.Cmwlth. 463, 322 A.2d 767 (1974). The Commonwealth Court correctly held that when the trial court attempted to supervise the bargaining agreement in the instant case, it impermissibly intruded into the Pennsylvania Labor Relations Board's jurisdictional province. I dissent.