Donald M. CARROLL, Jr., Secretary of Education

v.

RINGGOLD EDUCATION ASSOCIATION, an unincorporated association and Ringgold School District, and Ringgold Board of School Directors.

Appeal of Ringgold School District and Ringgold Board of School Directors, Appellants.

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 1994.

Decided Feb. 24, 1995.

James J. Flaherty, for appellants.

Ronald N. Watzman, for appellee Ringgold Educ. Ass'n.

Michael I. Levin, for amicus curiae Pennsylvania School Board Ass'n.

Stuart L. Knade for amicus curiae Pennsylvania State Educ. Ass'n.

Before COLINS, President Judge, and DOYLE, McGINLEY, SMITH, PELLEGRINI, FRIEDMAN and KELLEY, JJ.

KELLEY, Judge.

The Ringgold School District (District) and the Ringgold Board of School Directors (Board) appeal from a June 7, 1994 order of the Court of Common Pleas of Washington County (Chancellor) which ordered court-monitored bargaining between the Board and the Ringgold Education Association (Association).[1] The Chancellor further ordered that all members of the Association and all nine Board directors were required to attend the negotiations.

The facts surrounding the District's and the Board's appeal to this court are as follows. The collective bargaining agreement between the District and the Association expired on August 31, 1993. Therefore, the 1993–94 school year began without a collective bargaining agreement.

The Association commenced a strike on February 9, 1994 that ended upon the Association's return to work on February 11, 1994. By agreement, the terms of the expired collective bargaining were extended. Negotiations occurred between the District and the Association including, the utilization of fact finding, mediation, and mandatory non-binding final best offer arbitration pursuant to Act 88.[2] Despite the foregoing, the District and the Association did not successfully negotiate the terms of a new collective bargaining agreement. As a result, a second strike by the Association commenced on May 25, 1994.

Prior to the strike which began on May 25, 1994, the District provided 163 days of instruction to pupils attending schools in the District. On June 7, 1994, in order to ensure that the District complied with the 180-day period of instruction mandated by the Public School Code of 1949,[3] the Secretary of Education (Secretary) filed a complaint in equity and a petition for preliminary injunction with the Chancellor pursuant to section 1161–A of Act 88.[4] The Secretary was seeking an injunction compelling the Association to return to work and the District to schedule the requisite number of school days in order to ensure that the pupils of the District would receive 180 days of instruction before June 30, 1994. Neither the District nor the Association filed a responsive pleading to the Secretary's complaint in equity.

On June 7, 1994, simultaneously with the presentment of the Secretary's petition for preliminary injunction, the Association presented to the Chancellor a motion for court-ordered negotiations. After argument on the

---

1. The Pennsylvania School Board Association has filed an *amicus curiae* brief in support of the District and the Board and the Pennsylvania State Education Association has filed an *amicus curiae* brief in support of the Association.

2. Act of July 9, 1992, P.L. 403, 24 P.S. §§ 11–1101–A—11–1172–A.

3. Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702. Specifically, section 1501 of the Public School Code provides that "all public kindergartens, elementary and secondary schools shall be kept open each school year for at least one hundred eighty (180) days of instruction for pupils."

4. Section 1161–A provides:

When an employe organization is on strike for an extended period that would not permit the school entity to provide the period of instruction required by section 1501 by June 30, the Secretary of Education may initiate, in the appropriate county court of common pleas, appropriate injunctive proceedings providing for the required period of instruction.

Secretary's petition and the Association's motion, the Chancellor granted the Secretary's petition by order issued on June 7, 1994. This order granting the requested injunctive relief was not appealed to this court.

Immediately after granting the injunctive relief to the Secretary, the Chancellor issued a second order on June 7, 1994 which repeated, verbatim, the order granting the injunction, but with added language compelling the Board and the Association to engage in court-monitored bargaining commencing June 8, 1994 at 9:00 a.m. The second order further directed that all members of the Association and the nine directors of the Board were required to attend the negotiations.

On June 8, 1994, the District and the Board presented to the Chancellor an application for relief and for stay of order granting the Association's motion for court-ordered negotiations without notice to the other parties. The Chancellor denied the application for relief and stay but directed that the Board directors with conflicts of interest

5. The Chancellor also denied the District's motion to quash the Association's motion for court-ordered bargaining and denied the District's motion to quash the Associations's motion to vacate the automatic supersedeas.

6. Our standard of review of decisions by an equity court is narrow. A chancellor's findings of fact will not be disturbed absent an abuse of discretion or a capricious disbelief of the evidence or a lack of evidentiary support on the record for such findings. A chancellor's conclusions of law will not result in a reversal of a grant of injunctive relief unless the rules of law relied on are palpably wrong or clearly inapplicable. *Jersey Shore Area School District v. Education Association*, 519 Pa. 398, 548 A.2d 1202 (1988).

7. See Donald M. Carroll, Jr., Secretary of Education v. Ringgold Education Association, Ringgold School District, and Ringgold Board of School Directors, —— Pa.Commonwealth Ct. ——, 652 A.2d 417 (1994). In this action, the Secretary filed a complaint in equity and a petition for preliminary injunction pursuant to section 1161–A of Act 88 with the Chancellor on November 10, 1994. The Secretary's need to file the request for injunctive relief resulted from a strike by the Association which commenced on September 26, 1994. The Association commenced the strike because at the start of the 1994–95 school year, negotiations between the Association and the District had not resulted in a new collective

were not to participate in the actual negotiations.

Thereafter, the District and the Board filed a notice of appeal to this court resulting in an automatic supersedeas of the Chancellor's order pursuant to Pa.R.A.P. 1736. The Association presented to the Chancellor a motion to vacate the automatic supersedeas which was granted by the Chancellor by order dated June 17, 1994.[5] By order dated June 21, 1994, this court granted the District's and the Board's request for reinstatement of the automatic supersedeas of the Chancellor's June 7, 1994 order.

■ Initially, we note that there is no dispute that the only order on appeal before this court is that portion of the chancellor's second order of June 7, 1994 ordering court-monitored negotiations between the Board and the Association.[6] With respect to the District's and the Board's appeal from this order, it is clear that the appeal is now technically moot as the 1993–94 school year has ended and the District and the Association are now into the next school year for 1994–95.[7] Yet, this appeal raises an issue of

bargaining agreement. The Secretary sought injunctive relief compelling the Association to return to work and the District to schedule the requisite number of school days in order to ensure that the pupils received 180 days of instruction before June 30, 1995.

On November 17, 1994, the Chancellor declined to issue the requested injunction on the basis that the Chancellor lacked jurisdiction to enter such an injunction when the previous 1993–94 school year's strike litigation was currently on appeal before this court. Accordingly, the Chancellor characterized the Secretary's complaint in equity and petition for injunctive relief as additional pleadings in the instant appeal.

Thereafter, the Secretary filed a separate appeal with this court from the Chancellor's order of November 17, 1994 and also filed an application for relief seeking an order directing the Chancellor to entertain the Secretary's request for an injunction pursuant to Act 88. As the matters involved in the instant appeal before this court are separate and distinct from the matters raised by the Secretary's appeal of the Chancellor's November 17, 1994 order, this court declined to consolidate the Secretary's appeal of the Chancellor's November 17, 1994 order and the instant appeal.

After argument on the Secretary's application for relief, this court determined that the Chancellor had jurisdiction to entertain the Secretary's request for an injunction compelling the Associa-

important public interest, capable of repetition, which is apt to elude review. Therefore, we shall entertain this appeal with respect to the specific issue of whether the Chancellor had the authority to order court-monitored bargaining between the Board and the Association.[8] *See Jersey Shore; Reichley by Wall v. North Penn School District,* 533 Pa. 519, 626 A.2d 123 (1993); *Colonial Gardens Nursing Home v. Bachman,* 473 Pa. 56, 373 A.2d 748 (1977).

It is important for this court to first summarize the pertinent provisions of Act 88. Act 88 provides for collective bargaining between public school entities and public school employees or employee organizations.[9] Act 88 provides that collective bargaining is

> the performance of the mutual obligation of the employer or his representative and the representative of the employes to meet at reasonable times and confer in good faith with respect to wages, hours and other terms and conditions of employment or the negotiation of an agreement or any question arising thereunder and the execution of a written contract incorporating any agreement reached, but such obligation does not compel either party to agree to a proposal or require the making of a concession.

24 P.S. § 11–1111–A.

If an impasse between the parties occurs during collective bargaining, Act 88 sets forth certain steps to be taken in order to facilitate the reaching of a mutually acceptable collective bargaining agreement. First, the dispute or impasse is submitted to mediation which shall continue for so long as the parties have not reached an agreement. 24

P.S. § 11–1121–A; 24 P.S. § 11–1122–A. If after 45 days, mediation does not result in an agreement, the next step is submission to a fact finding panel and, thereafter, to nonbinding final best offer arbitration. 24 P.S. § 11–1122–A; 24 P.S. § 11–1125–A.

During the collective bargaining process, the employees are permitted to strike following forty-eight hours notice to the school entity. 24 P.S. § 11–1101–A. If a strike by employees or a lockout by an employer will prevent the school entity from providing the mandated 180 days of instruction required by section 1501 of the Public School Code, the parties are required to submit to mandated final best offer arbitration. 24 P.S. § 11–1125–A. When an employee organization is on strike for an extended period that would not permit the school entity to provide the mandated 180 days of instruction, the Secretary may initiate appropriate injunctive proceedings providing for the required period of instruction. 24 P.S. § 11–1161–A.

In the present case, the Chancellor determined that a problem arises once the collective bargaining impasse alternatives found in Act 88 have been utilized and the parties have failed to reach a resolution. The Chancellor concluded that Act 88 provides no further dispute resolution and provides no remedy for the "second" collective bargaining impasse once the parties have complied with the mandates of Act 88. Based on this conclusion, the Chancellor found that Act 88 must be read in *pari materia* with PERA since Act 88 has failed to provide remedy, relief and/or resolution.

**8.** The remaining issues raised by the District and the Board regarding noncompliance with the Pennsylvania Rules of Civil Procedure and the violation of the individual Board director's constitutional rights will not be addressed.

**9.** Our Supreme Court in *Reichley* noted that Act 88 effectively removed public educators from the scope of the Public Employee Relations Act, Act of July 23, 1970, P.L. 563, *as amended,* 43 P.S. §§ 1101.101—1101.2301 (PERA). *Reichley* at 524 n. 3, 626 A.2d at 126 n. 3. Section 6 of Act 88 provides that PERA is to be read in *pari materia* with the provisions of Act 88, but that PERA is repealed insofar as it is clearly inconsistent with the provisions of Act 88.

tion to return to work for the 1994–95 school year when the previous school year's strike litigation is currently on appeal to this court. We found that pursuant to section 1501 of The Public School Code and section 1161–A of Act 88, the Secretary has standing to file an injunction request in each successive school year for as long as a contract dispute may exist. We concluded that to find otherwise would defeat the constitutional mandate provided by art. III, § 14 of our state constitution which mandates that the General Assembly shall provide for the maintenance and support of a thorough and efficient system of public education to serve the needs of the Commonwealth. Pa. Const. art. III, § 14.

Therefore, relying exclusively on our Supreme Court's decision in *Armstrong School District v. Education Association,* 528 Pa. 170, 595 A.2d 1139 (1991), for guidance with regard to that decision's interpretation of PERA, the Chancellor determined that, as an equity court, it had the authority to order court-monitored bargaining between the Board and the Association. In *Armstrong,* our Supreme Court held that a court of equity had authority under PERA to require attendance of school board members and union negotiators at bargaining sessions of a frequency and duration determined by the court under the supervision of a state mediator when the equity court had issued an injunction stopping a school strike.

On appeal, the District and the Board argue that the Chancellor erred in relying on *Armstrong:* (1) because that was a case brought by a school district under section 1003 of PERA [10] which was clearly inconsistent with, and therefore, repealed by the subsequent enactment of Act 88; and (2) because that case has no factual or legal relevance to this case. In response, the Association contends that *Armstrong* is completely applicable to the present case and specifically approved the Chancellor's authority to issue an order compelling court-monitored bargaining.

■ This court believes that the Chancellor erred in relying on *Armstrong* for two reasons. First, it is clear that *Armstrong* was decided prior to the enactment of Act 88 when public school employees fell within the scope of PERA. As noted by our Supreme Court in *Reichley,* Act 88 effectively removed public educators from the scope of PERA by amending the Public School Code by adding provisions regarding collective bargaining.

Second, it was the school district that requested the injunction in *Armstrong* to end a strike by the teachers and for this reason the Supreme Court determined that since the school district sought equity it must do equity. The Supreme Court believed that it was the Chancellor's equitable duty to ensure that the bargaining process proceeded energetically and promptly once an injunction restraining striking had been issued.

■ In the present case, however, the Secretary, as plaintiff, pursuant to Act 88 was the party who requested the injunction to ensure that the pupils of the District were provided with the mandated 180 days of instruction. Thereafter, the Association presented to the Chancellor a motion for court-ordered negotiations between the Board and the Association, the defendants in the equity action. In granting the Association's motion, the Chancellor exceeded its authority under section 1161–A of Act 88 which grants the Secretary the power to seek "appropriate injunctive proceedings providing for the required period of instruction." 24 P.S. § 11–1161–A. Section 1161–A does not cloak the Chancellor with authority to go beyond issuing an injunction to end the strike by imposing a judicial settlement between the defending parties in the action. The Chancellor's only role under section 1161–A is to ensure that the children of this Commonwealth receive the required instruction time which would otherwise be unrecoverable. [11]

■ Further, Act 88 provides that while the parties have a mutual obligation to bargain in good faith, such "obligation does not compel either party to agree to a proposal or require the making of a concession." 24 P.S. § 11–1111–A. Clearly, the impasse alternatives available to the parties and the obli-

---

10. 43 P.S. § 1101.1003.

11. In *Jersey Shore,* our Supreme Court noted that the harm to the pupils in the subject school district must be acknowledged and quoted the following words of Chief Justice Earl Warren in the landmark decision of *Brown v. Board of Education,* 347 U.S. 483, 493, 74 S.Ct. 686, 691, 98 L.Ed. 873 (1954):

"[Education] is a principal instrument in awakening the child to cultural values, in preparing him for later professional training, and in helping him to adjust normally to his envi-

ronment. In these days, it is doubtful that any child may reasonably be expected to succeed in life if he is denied the opportunity of an education."

Chief Justice Warren's words, although written in 1954, reflect the most important purpose of Act 88: To ensure that each pupil educated in the Commonwealth of Pennsylvania has the opportunity to succeed in life through an education consisting of at least 180 days of instruction per school year.

gation to bargain in good faith does not encompass the notion that the bargaining process may be turned into one of forced negotiations.

While this court acknowledges that court-ordered negotiations may move the bargaining process along more promptly, we cannot ignore that since *Armstrong* was decided the General Assembly enacted Act 88. Noting the respective dates of the *Armstrong* decision and the enactment of Act 88, one can conclude Act 88 was the General Assembly's legislative solution to the *Armstrong* situation.

 In addition, we acknowledge that Act 88 does not provide for a remedy in the event the impasse alternatives found in Act 88 are complied with and a mutual agreement has still not been reached by the parties. However, by enacting Act 88 the General Assembly provided an extensive legislative scheme governing collective bargaining between public educators and the public school entities employing those educators. Therefore, it is within the province of the General Assembly, not this court through a judicial decision, to remedy any defects in Act 88 with respect to the parties' alternatives after all the provisions of Act 88 have been complied with and an agreement has not been reached due to an ongoing impasse.[12]

Act 88 specifically provides for *non-binding* mandatory arbitration. If either the employer or the employe organization rejects the determination of the majority of the arbitrators they are left with three choices: (1) the employe organization may initiate a legal strike or resume a legal strike initiated prior to submission to final best offer arbitration; (2) The employer may hire substitutes; and (3) the employer may initiate a legal lockout or resume a legal lockout initiated prior to submission to final best offer arbitration. 24 P.S. § 11–1125–A. There are no provisions

granting the authority to either party to request that a court enter an order ordering court monitored negotiations. Act 88 is clear as to the alternatives that are available to the parties when an impasse occurs during collective bargaining and court-ordered negotiations is not one of those alternatives.

Accordingly, for the reasons set forth in this opinion, we hold that the Chancellor in this case committed an error of law when it ordered court-monitored bargaining between the Board and the Association.

Further, this court would like to point out that we do not agree with the District and the Board that Act 88 repealed section 1003 of PERA as being inconsistent with Act 88. Section 1003 governs strikes after exhaustion of negotiation and mediation procedures and equitable relief in certain circumstances. The equitable relief referred to in section 1003 which may be granted to halt a strike by public employees is available only to the public employer. There is no provision contained in section 1003 which gives the Secretary standing to request an injunction to end a strike if the required 180 days of instruction is threatened.

To remedy this situation, the General Assembly enacted section 1161–A of Act 88 which provides that the Secretary *may* initiate appropriate injunctive proceedings providing for the required period of instruction. 24 P.S. § 11–1161–A. According to the plain language of section 1161–A of Act 88, the Secretary is not mandated to initiate injunctive proceedings. Therefore, if the Secretary does not exercise his authority pursuant to section 1161–A of Act 88 or if the public employer wishes to end the strike on other grounds, the public employer may under section 1003 of PERA request equitable relief in the appropriate court of common pleas and shall be entitled to such relief if the court finds that the strike creates a clear and present danger or threat to the health, safety or welfare of the public. 43 P.S. § 1101.1003.

---

**12.** This court recognizes the equitable powers of a chancellor; however, because of the extensive legislative scheme provided in Act 88 or where the General Assembly has provided other extensive legislative schemes, it is incumbent on courts to restrain their equitable powers in these situations.

■ While it is clear that section 1003 has been rendered basically ineffective due to the Secretary's standing to seek an end to a strike by public educators, the option still remains for public school entities to seek injunctive relief to end a strike by its employees. Accordingly, we hold that section 1003 of PERA was not repealed by the enactment of Act 88.

The June 7, 1994 order of the Chancellor ordering court-monitored negotiations between the Board and the Association is reversed.

### ORDER

NOW, this 24th day of February, 1995, the order of the Court of Common Pleas, dated June 7, 1994, at No. 94–2924, ordering court-monitored bargaining between the Ringgold Board of School Directors and the Ringgold Education Association is hereby reversed.

McGINLEY, J., concurs and dissents.

McGINLEY, Judge, concurring and dissenting.

I concur in the majority's opinion insofar as it reaches the merits of the argument of "whether the Chancellor had the authority to order court-monitored bargaining between the Board and the Association." (Footnote omitted.) As the majority correctly notes, only that portion of the Chancellor's June 7, 1994, order that the Board and the Association undergo court-monitored negotiations is on appeal before this Court. The majority also correctly notes that although the appeal is moot because the 1993–94 school year has ended, the issue on appeal is one of "important public interest, capable of repetition, which is apt to elude review." I also concur in the majority's opinion that the Secretary has the standing to request an injunction where the strike threatened the mandatory

completion of 180 days of instruction under Section 1501 of the Public School Code of 1949.

However, I respectfully dissent to the portion of the majority's conclusion that the Chancellor's authority is limited to the issuance of an injunction.[1] The record reflects that the Secretary of Education filed a complaint in equity and a petition for a preliminary injunction to assure that the District complied with the 180 days of instruction mandated under Section 1501 of the Public School Code of 1949[2], 24 P.S. § 15–1501.[3] The Association then requested court-ordered negotiations. The Chancellor granted injunctive relief and the request for court-ordered negotiations, concluding:

The real problem arises once the collective bargaining impasse alternatives have been utilized and have failed to reach a resolution as here. Act 88 provides no further dispute resolution and provides no remedy for the 'second' collective bargaining impasse once the parties have complied with the mandates of Act 88. Therefore, this court finds that Act 88 must be read in pari materia with Act 195 since Act 88 has failed to provide remedy, relief and/or resolution.

. . . .

This Court agrees that Act 195 provides for injunctive relief to the Defendant school district and that Act 88 provides additional injunctive relief to the Secretary of Education. This Court had equity pursuant to Plaintiff's Complaint in Equity and therefore, retains jurisdiction over the entire controversy.

Opinion of the Chancellor, July 12, 1994, at 4–5.

I believe that the Chancellor properly determined that she possessed the equitable

---

1. The majority concludes that Act 88 prohibits court-ordered negotiations and that until the legislature remedies "any defects in Act 88 ... after all the provisions of Act 88 have been complied with and an agreement has not been reached due to an ongoing impasse" courts must "restrain" the use of their equitable powers.

2. Act of March 10, 1949, P.L. 30, *as amended.*

3. Prior to the May 25, 1994, strike, the District provided 163 days of instruction.

authority to compel court-monitored bargaining between the Board and the Association.

In *Armstrong School District v. Education Association,* 528 Pa. 170, 595 A.2d 1139 (1991) our Pennsylvania Supreme Court stated:

> Inherently, courts sitting in equity have the power to enforce their own decrees.
>
> > The power of a court of equity to enforce its own decrees is a necessary incident to the jurisdiction of the court. 'Without such power, a decree would in many cases be useless "All courts [of equity] have this power, and must necessary have it; otherwise they could not protect themselves from insult or enforce obedience to their process. Without it they would be utterly powerless" '.... *The jurisdiction of the court continues for the purpose of enforcing the decree....* Where there is an unimpeachable final decree, contemplating the performance of a series of acts, the proceedings to enforce compliance with the decree must be through that proceeding.... *Butler Co. v. P., H., B. and N.C. Ry. Co.,* 298 Pa. 347, 350–351, 148 A. 504, 505 (1929); *Roth v. M'Clelland,* 6 Watts 68 (1837). *Advanced Management Research, Inc. v. Emanuel,* 439 Pa. 385, 391, 266 A.2d 673, 674 (1970).

*Id.* at 176–77, 595 A.2d at 1142–43 (emphasis in original).

I would affirm the order of the Chancellor.

DOYLE, J., joins in this concurring and dissenting opinion.