East Penn Township               :
                                   :
         v.                 :
                                   :
William A. Swartz and Sarah L. Swartz, :  No. 769 C.D. 2022
              Appellants    :  Argued: September 11, 2023

BEFORE:   HONORABLE CHRISTINE FIZZANO CANNON, Judge
                 HONORABLE STACY WALLACE, Judge
                 HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON            FILED: October 20, 2023

          William A. Swartz and Sarah L. Swartz (Swartzes) appeal from the June 30, 2022, order of the Court of Common Pleas of Carbon County (trial court). The trial court's order denied the Swartzes' motion to enforce a settlement agreement with East Penn Township (Township) concerning zoning violation notices issued to the Swartzes by the Township in 2017. Upon review, we affirm.

## I. Factual and Procedural Background

          On November 17, 2017, the Township's zoning officer issued notices of violations of the Township's Zoning Ordinance[1] (Ordinance) to the Swartzes concerning their property at 364 Berger Creek Road, which is in the Township's

---

[1] E. Penn Twp., Pa., Zoning Ordinance, adopted October 5, 2009, available at https://www.eastpenntownship.com/_files/ugd/227ba8_678ce60cdd394afdab44de9b48a11f8b.pdf (last visited October 19, 2023).

Business Commercial (BC) zoning district.  Reproduced Record (R.R.) at 12a-17a. The notices cited the Swartzes for four violations: using their property as a trucking terminal and junkyard,[2] neither of which is a permitted use in the BC district; failing to apply for zoning permits; failing to submit an engineer's report on whether the property, which is traversed by a creek, is in a high-water table, wetlands, or a flood area (property uses in these areas are limited by the Ordinance); and violating the Ordinance's buffer requirements.  *Id*.  The notices gave the Swartzes 30 days to take steps to resolve the violations or appeal the notices.  *Id*.

The Swartzes did not appeal the notices or correct the asserted violations.[3]  Township's Complaint; Original Record (O.R.) at 13.[4]  The Township filed a petition for enforcement, and in April 2018, a Magisterial District Judge (MDJ) issued a judgment against the Swartzes for a $100 fine and reimbursement of the Township's $93.25 filing fee.  *Id*. at 14.  The Swartzes again did not pay the judgment or cure the violations, and the Township filed a complaint with the trial court on August 10, 2018, seeking ongoing fines of $500 per day, attorneys' fees, and costs.  *Id*. at 15-16.  After the Swartzes answered the complaint, the Township filed a motion for judgment on the pleadings.  *Id*. at 47-51.

---

[2] The Ordinance defines a "trucking terminal" as "[a] site, building and/or structure used by the trucking transport industry or similar commercial enterprise as a centralized transfer point for the shipping of goods to other locations" and a "junkyard" as "any place where junk is stored, bought, sold, traded, disposed of, or accumulated."  Ordinance § 201.  "Junk" is defined as "[a]ny worn-out or discarded material whether usable or not, including, but not limited to, old metal, machinery, or its parts, abandoned automobiles or other vehicles, and damaged automobiles or other vehicles whether power operated or otherwise and whether or not in usable condition."  *Id*.

[3] The Swartzes assert that they did not appeal the notices because they believed at the time that they were working with the zoning officer to resolve any issues.  Swartzes' Br. at 35 n.3.

[4] Original Record references are to electronic pagination.

On August 9, 2019, the trial court granted the Township's motion for judgment on the pleadings as to the underlying violations because the Swartzes failed to timely appeal the 2017 notices. R.R. at 7a-8a. The trial court denied the Township's request for fines, costs, counsel fees, and an injunction to prevent further zoning violations. *Id*. At the March 6, 2020, bench trial on those issues, the Township's zoning officer testified that he inspected the property earlier that week, observed multiple vehicles parked on it, and believed the Swartzes were still in violation of the Ordinance. Notes of Testimony (N.T.), March 6, 2020, at 7-9.

On April 27, 2020, the trial court issued a verdict in the Township's favor. R.R. at 9a-10a. The trial court ordered the Swartzes to cease, desist, and cure the violations within 30 days. *Id*. The trial court also imposed a judgment in the amount of $19,051.25, representing $2,151.25 in counsel fees and $16,900.00 in fines of $25.00 per day since the MDJ's April 30, 2018, order. *Id*. The trial court retained jurisdiction over the matter "to ensure that the foregoing directives are strictly complied with by the [Swartzes] and to hear any and all claims for contempt thereof." *Id*.

On June 24, 2020, the Township filed a civil contempt petition, asserting that the Swartzes failed to cease, desist, and cure the violations or pay the judgment. R.R. at 22a-26a. A hearing was scheduled for August 27, 2020, but the trial court granted a continuance to November 16, 2020, after the Swartzes, now represented by current counsel, requested additional time for file review and to "pursue a dialog" on settlement with the Township. *Id*. at 34a-38a.

On November 10, 2020, the Swartzes sought another continuance. R.R. at 40a-42a. They stated that the parties had met, toured the Swartzes' property, and agreed that the Swartzes would submit new permit applications (which they had

3

already done on November 3, 2020) and that the Township's counsel would coordinate with the Township's zoning officer and Board of Supervisors (Board) to consider the application and "the steps necessary to resolve and settle this action." *Id.* The trial court rescheduled the matter for January 7, 2021, then again continued it to February 9, 2021. *Id.* at 46a & 58a. In early January 2021, the Swartzes issued notices to Township personnel to attend and testify at the February hearing; the trial court denied the Township's motion to quash the notices in a February 5, 2021, order. R.R. at 138a. That day, the Township moved to continue further proceedings on its contempt petition in light of the parties having scheduled a meeting to discuss settlement. O.R. at 234. The trial court set the next hearing for April 19, 2021. *Id.* at 237.

The parties exchanged correspondences on February 25, 2021, and March 1, 2021.[5] The February 25, 2021, letter from Township counsel to the Swartzes' counsel stated that in the interest of settling the matter, the Township proposed reducing the $19,051.25 judgment to the Township's legal fees and costs totaling $5,302.35. That amount included the amounts incurred by the Township to that point and an estimated additional $1,000 for the Township's counsel to handle "correspondence, negotiation of the remaining terms, drafting the agreement and [Board] resolution, and related items." Township's Feb. 25, 2021, email & letter to the Swartzes (appended to the Swartzes' June 27, 2023, motion to enlarge the record). The letter stated that the Township would accept $5,302.35 in "full and complete settlement" of the pending judgment; the Swartzes would have six months to pay the amount due, "during which time the proceedings in the contempt matter

---

[5] These emails and letters were not of record because the Swartzes did not include them in their motion to enforce settlement. On June 27, 2023, the Swartzes filed with this Court an application to enlarge the record to include them. At oral argument on September 11, 2023, the Township stipulated that it did not object to the Swartzes' application, which is therefore granted.

4

will be stayed." *Id*. The letter requested a response from the Swartzes to the foregoing "settlement proposal" and added that it represented the Township's "good faith offer to amicably compromise and/or resolve the above-referenced matter." *Id*. However, it also stated:

> The foregoing does not constitute an admission or waiver with respect to any claims, defenses, issues of fact or law or any other matters whatsoever in the above-referenced matter, but rather, is strictly intended for confidential settlement negotiation purposes only[.]

*Id*.

On the morning of March 1, 2021, the Township's counsel emailed the Swartzes' counsel, stating that a Board meeting would be taking place that evening and that "if [the Swartzes] are in agreement with the terms of the compromise set forth in my letter and email of February 25, 2021, I will need to hear from you within the next couple of hours so I will have time . . . to draft an appropriate resolution and place it on the meeting agenda[.]" Township Counsel's March 1, 2021, email to the Swartzes' counsel (appended to the Swartzes' June 27, 2023, motion to enlarge the record). *Id*.

About 30 minutes later, the Swartzes' counsel responded by email, attaching a letter "in response to your proposal on the monetary aspect of a settlement." Swartzes' Counsel's March 1, 2021, email & letter to the Township's Counsel (appended to the Swartzes' June 27, 2023, motion to enlarge the record). The letter stated that the Swartzes "are amenable to settling, compromising and satisfying the judgment" for $5,302.35, to be "paid over a six[-]month period contingent upon successful negotiation of the overall settlement terms in this matter." *Id*. The letter added that the Swartzes "would begin making payments on

the monetary aspect of the settlement after we reach an approved agreement as to all settlement terms in writing." *Id.*

That evening of March 1, 2021, at an open meeting, the Board adopted a resolution concerning the matter. R.R. at 183a-84a. The resolution indicated that the parties "desire to settle and resolve" all pending matters and stated that the Township would agree to stay proceedings on its contempt petition for six months, during which the parties "shall engage in good faith negotiations to formalize the terms of a settlement of all remaining issues and/or disputes" between them. *Id.* at 184a. The resolution further stated:

> Conditioned upon the successful negotiation and approval of a formal, written settlement agreement by and between the [parties], the Swartzes shall tender to the Township, and the Township shall accept, the sum of [$5,302.35], which must be paid in full within six (6) months of the date of the Swartzes' execution of such written agreement, in full settlement, compromise, and satisfaction of the [$19,051.25 judgment].

*Id.*[6]

The next day, counsel for the Township sent the Swartzes' counsel a copy of the resolution concerning "the conditional compromise of the monetary judgment." R.R. at 186a. The Township's counsel stated that "between you, me, and [the zoning officer], we should be able to hammer out the terms of the underlying settlement agreement." *Id.* The Swartzes' counsel responded that same day:

> I agree that we can work out the terms for the settlement agreement. . . . I can provide you with a list of settlement terms to start negotiations or you can provide a list to me. How do you want to start moving this forward? I want to

---

[6] The sum of $5,302.35 represented the amount of the Township's legal bills to that point. R.R. at 183a.

hammer out a final settlement agreement as quickly as we can.

*Id*. at 188a.

On April 8, 2021, the Township filed a motion with the trial court seeking to stay further contempt proceedings for six months. R.R. at 146a-47a. The motion stated that the parties "wish to engage in good-faith negotiations in an effort to settle and resolve the Township's pending [p]etition for [c]ontempt as well as all other remaining issues and/or disputes between them" and to "avoid the risks and expenses associated with further protracted litigation." *Id*. The trial court rescheduled the April 19, 2021, hearing to November 22, 2021. *Id*. at 149a & 152a. On April 22, 2021, the Swartzes' counsel emailed the Township's counsel and asked to schedule a conference call "to get terms for a settlement moving forward[.]" *Id*. at 192a. On May 12, 2021, the Swartzes' counsel again emailed the Township's counsel seeking to "take action to work out the settlement terms" and requesting that the Township "prioritize good faith negotiations with the [Swartzes] to formalize the terms for a settlement of this matter." *Id*. at 196a-97a.

On May 21, 2021, the Swartzes' counsel emailed the Township's counsel and confirmed that they spoke the previous day. R.R. at 199a. The email stated that the zoning officer would prepare instructions for the Swartzes to obtain zoning permits and approvals on their November 2020 application and that those instructions would be incorporated into the written settlement agreement. *Id*. In closing, the Swartzes' counsel wrote: "We appreciate the Township's efforts to move forward with negotiating the terms for a settlement." *Id*. On July 14, 2021, the zoning officer sent the instructions to counsel for both sides. *Id*. at 201a. On July 19, 2021, the Swartzes' counsel emailed the Township's counsel: "We need to

7

discuss getting terms together for a settlement agreement." *Id*. at 204a. She sent a similar email on August 24, 2021. *Id*. at 206a.

Then, on August 30, 2021, counsel for the Township sent the Swartzes' counsel an email, which stated:

> Enclosed is "a [s]ettlement [a]greement which I have drafted for review and discussion purposes. If the terms are acceptable to your client, and subject to any review comments which I may receive from the [z]oning [officer] and/or [Board], I will recommend that the Board approve same in executive session at their next regular meeting on Monday, September 6, 2021.

R.R. at 209a. The enclosed agreement contained the above-described terms concerning the $5,302.35 amount to resolve the judgment within six months of the agreement being executed and the Swartzes' compliance with the zoning officer's instructions. *Id*. at 211a-13a. Relevant to this appeal, it also included the following in the list of terms and conditions:

> [The Swartzes] are hereby individually and collectively bound by, and shall strictly comply with, all of the non-monetary duties and obligations imposed upon them in the Township's enforcement notice dated November 17, 2017, and in the aforementioned Order of Courts dated April 27, 2020 [(the trial court's trial verdict)] and August 9, 2019 [(the trial court's grant of the Township's motion for judgment on the pleadings)], unless and until [the Swartzes] have applied for and obtained zoning permits (and any necessary approvals for variance(s) and/or special exception use(s) from the East Penn Township Zoning Hearing Board) for any use(s) upon the Subject Property which do not strictly comply with [the cited provisions of the Ordinance], including but not limited to [the Swartzes'] use of the Subject Property as a trucking terminal for the storage of unregistered and or non-inspected vehicles, trailers and junk.

*Id*. at 211a-12a.

8

On September 3, 2021, the Swartzes' counsel emailed the Township's counsel, stating that the draft included "terms that are not acceptable and [that are] contrary to the Township's representations of good faith in settling this matter." R.R. at 218a. The email expressed disappointment with the Township's counsel's tardiness, failure to respond to previous outreach, and presentation of the draft agreement days before the Labor Day weekend with only a few days to review it: "To be clear, the terms of the proposed draft settlement agreement are not acceptable to my clients and require further review and discussion. . . . I will review the proposed draft settlement and provide our comments in accordance with my schedule[.]" *Id*. On September 9, 2021, the Township's counsel replied, stating that the Board had set their October 4, 2021, meeting as the new deadline: "In the event that your clients' signed Settlement Agreement is not received by the [Board] by the said date and time, [the Township's] settlement offer shall be deemed to have been permanently rescinded at that time" and proceedings before the trial court would resume on the full amount of the judgment. *Id*. at 220a.

On September 23, 2021, the Swartzes' counsel replied, expressing hope that the parties "can work together to finalize this settlement for our clients." R.R. at 222a. The email explained that the above-quoted term in the draft agreement stating that the Swartzes must comply with the 2017 violation notices and the trial court's previous orders conflicted with the mutual goal of actually settling those disputes because the Swartzes did not concede the violations, given that the trial court's affirmance of the notices was based on the Swartzes' failure to appeal them rather than on the merits. *Id*. The Swartzes therefore wished to keep the "status quo" of leaving the existing trucks and trailers on their property until they obtained approvals and permits from their November 2020 application. *Id*. The email closed

9

as follows: "We are so close to settling this situation . . . . I would appreciate hearing back from you on this as soon as possible. I will finalize my comments to include what I stated above and get them to you for review." *Id*.

The Township's counsel replied that afternoon, expressing disagreement with the Swartzes' characterization of the "purpose" of the proposed agreement. R.R. at 225a. The Township believed the proposed agreement was solely to resolve the judgment and pending contempt petition, which the Township had agreed to in exchange for the $5,302.35 sum. R.R. at 225a. The Township did not view the agreement as resolving the 2017 zoning violations, which the trial court had upheld and which were now final. *Id*. The email added that the Swartzes' stated wish to leave their property in violation of the ordinance pending their procurement of permits exposed them to further penalties, since the trial court's prior orders instructed them to cure the violations, and those orders stood regardless of the Swartzes' ongoing efforts to secure permits. *Id*. The email added that in light of the parties' apparent disagreement on the purpose of any agreement and to ensure proper documentation, all further communications would be in writing; the email closed by reiterating the Township's October 4, 2021, deadline. *Id*.

On September 26, 2021, the Swartzes' counsel responded, including her "revisions and comments" to the draft agreement and expressing hopes of getting settlement "back on track." R.R. at 228a. She agreed that the issue was to "resolve the issues in the Township's above-captioned enforcement action through [the Swartzes] obtaining a zoning permit and land development approval for the use of their property." *Id*. at 229a. She also reiterated the Swartzes' agreement to the $5,302.35 amount to settle the judgment, which the Swartzes would have six months to pay "after signing a mutually negotiated and approved settlement agreement" as

10

stated in the Township's March 2021 resolution. *Id*. She pointed out that since the Swartzes apparently were to have no ability to negotiate the terms of the agreement, the possibility of duress, coercion, and unconscionability arose. *Id*. On September 29, 2021, the Swartzes' counsel emailed again, stating that the Township's counsel's refusal to communicate except in writing was not good faith, which the Swartzes' counsel did not understand "since we have an agreement in principle." *Id*. at 231a.

The Township did not reply, and two days later, on October 1, 2021, the Swartzes filed a "Motion to Enforce the Parties' Settlement Agreement and for a Settlement Conference" (motion to enforce). R.R. at 154a-72a. The motion set forth the Swartzes' version of the events and asserted that the parties had reached the essential terms of a settlement when they met with the Board and the zoning officer on February 17, 2021. Those terms were that the zoning officer would provide instructions for the Swartzes' November 2020 zoning permit application, the Township would provide a reduced amount to resolve the April 2020 judgment, the parties would complete a written settlement agreement, the Swartzes would then have six months to pay the amount due, and upon their compliance with the zoning officer's instructions, the Board would not oppose issuance of the permits and approvals. *Id*. at 157a.

The motion to enforce reiterated the Swartzes' objection to any requirement that they comply with the trial court's previous orders concerning the 2017 violation notices. R.R. at 165a. The Swartzes characterized that term in the draft agreement as inessential, not "directly related to the essence of the dispute between the Parties," and an improper attempt by the Township to perpetuate the underlying issue that the agreement was intended to resolve, specifically, the Township's "allegations of zoning violations on [the Swartzes'] property along with

11

the money judgment." *Id*. at 165a, 168a & 170a.  The motion asked that the essential terms upon which the sides agreed, and which the Board memorialized in its March 2021 resolution, be deemed binding and enforceable and that the trial court supervise a settlement conference in order to bring the matter to resolution.  *Id*. at 170a-72a.

On October 14, 2021, the Township filed an answer denying that a settlement agreement had ever been reached.  R.R. at 234a-59a.  Then, on October 21, 2021, the Township withdrew its contempt petition.[7]  *Id*. at 265a.  This left only the Swartzes' motion to enforce a settlement agreement actively pending with the trial court.  The parties submitted briefs on the motion to enforce, and the trial court heard argument, at which the Swartzes' counsel reiterated that in late February and early March 2021, the parties had reached a binding agreement on the essential settlement terms.  N.T., March 28, 2022, at 4-6.  The Township's counsel responded that no agreement had ever been reached with the Swartzes before August 2021, that the August 2021 version he sent the Swartzes was only a draft but nevertheless an offer rejected by the Swartzes, and that because no agreement was ever formed, the Board could not have approved it at a public meeting as required by the Sunshine Act, 65 Pa.C.S. §§ 701-716.[8]  *Id*. at 22-25.

In a June 30, 2022, order, the trial court denied the Swartzes' motion to enforce.  R.R. at 343a-44a.  The trial court's order and subsequent opinion stated that once the Township withdrew its contempt petition, there was no active matter

---

[7] The Township asserts that in the wake of the Swartzes "frivolous" motion to enforce, the Board determined that incurring further costs to litigate the contempt petition was no longer justified.  Township's Br. at 22.

[8] Section 704 of the Sunshine Act states: "Official action and deliberations by a quorum of the members of an agency shall take place at a meeting open to the public unless closed under section 707 (relating to exceptions to open meetings), 708 (relating to executive sessions) or 712 (relating to General Assembly meetings covered)."  65 Pa.C.S. § 704.

before the court and the Swartzes had no standing to file their motion to enforce because such motions are ancillary rather than principal in nature. *Id*. The trial court also found on the merits that based on the parties' communications in late August and September in 2021, there was no meeting of the minds and therefore no settlement agreement to enforce. *Id*.; Trial Ct. Op., Sept. 9, 2022, at 6-8. The Swartzes appealed and this matter is now ripe for determination.[9]

## II. Issues

The Swartzes assert that the trial court erred in concluding that the Swartzes did not have standing to file their motion to enforce a settlement agreement, that the Swartzes had not established an enforceable settlement agreement, and that the Board did not approve an agreement at a public meeting as required by the Sunshine Act. O.R. at 465-69; Swartzes' Br. at 3.

## III. Discussion
### A. Swartzes' Standing to File Motion to Enforce Settlement Agreement

A plaintiff must, as a threshold matter, have standing to bring an action seeking redress from the courts. *Stilp v. Commonwealth*, 927 A.2d 707, 710 (Pa. Cmwlth. 2007).[10] The traditional concept of standing dictates that a person who is

___

[9] In a memorandum opinion, this Court previously denied the Township's motion to dismiss the Swartzes' appeal for failure to file post-trial motions with the trial court. *E. Penn Twp. v. Swartz* (Pa. Cmwlth., No. 769 C.D. 2022, filed Sept. 22, 2022) (unreported). We concluded that since the trial court decided the Swartzes' motion to enforce on the basis of briefs and oral argument, no "trial" had been conducted. Therefore, the Swartzes' failure to file post-trial motions did not waive their substantive issues for consideration by this Court.

[10] "The issue of standing is a question of law; thus, our standard of review is *de novo* and our scope of review is plenary." *Firearm Owners Against Crime v. City of Harrisburg*, 218 A.3d 497, 505 (Pa. Cmwlth. 2019).

not adversely impacted does not have standing to proceed with the court system's dispute resolution process. *Id.* Pennsylvania courts do not render decisions in the abstract or offer purely advisory opinions; consistent with this precept, the requirement of standing arises from the principle that judicial intervention is appropriate only when the underlying controversy is real and concrete. *Id.*

Here, although the trial court and parties focused on standing, the question is not whether the Swartzes were appropriate parties to file their motion to enforce, but rather, the related question of whether the "underlying controversy is real and concrete," which pertains more closely to subject matter jurisdiction. *Brown v. Liquor Control Bd.*, 673 A.2d 21, 23 (Pa. Cmwlth. 1996) (stating that "[w]hen the matter does not present a case or controversy, the courts have consistently held that they were without jurisdiction to hear the matter[.]").

In cases concerning motions to enforce settlements, our courts have consistently held that an underlying action must be viable in order for the court to have jurisdiction over the motion. For example, in *Kalmeyer v. Municipality of Penn Hills*, 197 A.3d 1275 (Pa. Cmwlth. 2018), the plaintiff sued the municipality over a sewage fee ordinance in 1988. *Id.* at 1277. The matter settled and the action was discontinued in 1994 without incorporation into any order by the trial court. *Id.* Then, in 2012, the plaintiff filed a motion to enforce the settlement, which the trial court decided on the merits. *Id.* at 1278. This Court, however, addressed the case on the basis of jurisdiction. *See Szabo v. Commonwealth*, 93 A.3d 919, 921 n.3 (Pa. Cmwlth. 2014) (stating that "the issue of subject matter jurisdiction is not waivable and may be raised by this court *sua sponte*[.]"). We distinguished between an instance where a settlement with terms for future performance is part of a trial court order, in which case the court retains jurisdiction to enforce the order even if the

14

action is discontinued, with an instance where a matter is discontinued without incorporation of settlement terms into an order, in which case the trial court "loses jurisdiction to act and cannot enforce the settlement on a petition filed in the original, discontinued action." 197 A.3d at 1280. Because the settlement in *Kalmeyer* was not incorporated into a trial court order, the underlying matter ceased to exist when it was discontinued and the trial court had no jurisdiction to consider the plaintiff's motion to enforce the settlement agreement; we therefore vacated and remanded for the trial court to dismiss the motion to enforce for lack of jurisdiction. *Id*. at 1281; *see also Camp Horne Self Storage LLC v. Lawyers Title Ins. Corp.*, 150 A.3d 999, 1002 (Pa. Super. 2016) (holding that a discontinued matter cannot be revived for the purpose of a motion to enforce settlement, and therefore, the trial court lacked jurisdiction to consider the motion).[11]

However, in the absence of a formal discontinuance, even if a settlement is not incorporated into a trial court order, the court may retain jurisdiction to address a motion to enforce the settlement that arises in the equity (or non-monetary) context. *See Armstrong Sch. Dist. v. Armstrong Educ. Ass'n*, 595 A.2d 1139, 1142-43 (Pa. 1991) (stating that "[w]here equity assumes jurisdiction for one or more purposes, it will retain jurisdiction for all purposes to give complete relief and to do complete justice between the parties. This may include an award of equitable relief not covered by the original prayer.").

Here, the trial court's April 2020 verdict ordered the Swartzes to cease, desist, and cure the original violations. R.R. at 9a-10a. The verdict also imposed the $19,051.25 judgment on the Swartzes and expressly retained jurisdiction over

---

[11] In general, Superior Court decisions are not binding on this Court, but they offer persuasive precedent where they address analogous issues. *Lerch v. Unemployment Comp. Bd. of Rev.*, 180 A.3d 545, 550 (Pa. Cmwlth. 2018).

the matter "to ensure that the foregoing directives are strictly complied with by the [Swartzes] and to hear any and all claims for contempt thereof." *Id*. at 10a. Subsequently, when the Swartzes filed their motion to enforce a settlement agreement in October 2021, the trial court concluded they had no standing to do so because once the Township withdrew its contempt petition, there were no pending matters before the trial court and a "motion to enforce may be only ancillary to a civil action—not be the action itself." Trial Ct. Op. at 7 (quoting *Camp Horne*) (additional quotation marks omitted).

The Swartzes argue that the trial court erred in concluding that they had no standing to pursue their October 2021 motion to enforce. Swartzes Br. at 27-32. They point out the trial court's retention of jurisdiction in its April 2020 verdict and add that no discontinuance was ever filed to extinguish the underlying zoning matter even though the verdict had been final for over a year. *Id*. The Township essentially agrees with the trial court. Township's Br. at 39-42.

We agree with the Swartzes. Unlike in *Kalmeyer* or *Camp Horne*, no discontinuance was ever filed here. The trial court expressly retained jurisdiction in its April 2020 verdict to ensure the Swartzes' compliance and address contempt issues that might arise, and the lack of a formal termination of the underlying action meant that the trial court was not divested of jurisdiction to "give complete relief and to do complete justice between the parties," including the possibility of "an award of equitable relief not covered by the original prayer." *Armstrong Sch. Dist.*, 595 A.2d at 1142-43. The Swartzes' motion to enforce concerned the underlying zoning issues and the money judgment, both of which were encompassed in the trial court's verdict. Therefore, the motion fell within the broad authority described in *Armstrong School District*. As the trial court had jurisdiction to consider the

16

Swartzes' motion to enforce, the Swartzes certainly had standing to file the motion, as they clearly had a substantial, direct, and immediate interest in adjudication of their belief that they had reached a binding settlement agreement with the Township. The trial court's order in this regard is therefore not adopted.

## B. Whether an Enforceable Settlement Agreement Existed

The enforceability of a settlement agreement is determined according to principles of contract law.[12] *Mazzella v. Koken*, 739 A.2d 531, 536 (Pa. 1999). Therefore, to be enforceable, a settlement agreement must possess the elements of a valid contract: offer, acceptance and consideration; and there must be a mutual meeting of the minds. *Ribarchak v. Mun. Auth. of Monongahela*, 44 A.3d 706, 708 (Pa. Cmwlth. 2012). "[I]t is essential to the enforceability of a settlement agreement that the minds of the parties should meet upon *all* the terms, as well as the subject-matter, of the agreement." *Mazzella*, 739 A.2d at 536 (emphasis added; internal quotations and citation omitted). When a settlement agreement contains all essential terms for a valid contract, a court may enforce the terms of the agreement, even if the terms are not yet formalized in writing. *Mazzella*, 739 A.2d at 536; *Hydrojet Servs., Inc. v. Reading Area Water Auth.*, 220 A.3d 1199, 1204 (Pa. Cmwlth. 2019) (citing *Mastroni-Mucker v. Allstate Ins. Co.*, 976 A.2d 510, 523 (Pa. Super. 2009)).

---

[12] When reviewing a trial court's decision on a motion to enforce a settlement agreement, "our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court." *Hydrojet Servs., Inc. v. Reading Area Water Auth.*, 220 A.3d 1199, 1204 (Pa. Cmwlth. 2019). However, "we are only bound by the trial court's findings of fact which are supported by competent evidence." *Id.* "The prevailing party is entitled to have the evidence viewed in the light most favorable to its position." *Id.* "Thus, we will only overturn the trial court's decision when the factual findings of the court are against the weight of the evidence or its legal conclusions are erroneous."

An "essential term" is one that "must be included for a contract to exist[.]" Black's Law Dictionary (11th$^h$ ed. 2019).

In *Hydrojet*, a dispute regarding unpaid water and sewage bills, the parties reached a verbal settlement agreement at a meeting. 220 A.3d at 1205. The water authority sent a draft agreement to Hydrojet, whose president signed it but struck out a provision stating that the agreement was made voluntarily and without duress or undue influence. *Id*. at 1201. Hydrojet then made a lump sum payment to the water authority. *Id*. Hydrojet's counsel contacted the water authority to confirm the agreement, but the water authority's counsel replied that the agreement had not been accepted. *Id*. at 1202. Hydrojet sent the water authority another signed copy of the agreement with the "duress provision" restored, but the water authority refused to accept it and Hydrojet filed a motion to enforce the agreement. *Id.* The trial court granted the motion. *Id*.

This Court affirmed, finding that the "necessary prerequisites for a valid contract" were established verbally at the parties' meeting, specifically the amount Hydrojet would pay the water authority and the water authority's promise to release Hydrojet from claims based on past water usage. 220 A.3d at 1205. We added that even if the verbal agreement had not been binding, Hydrojet's first signed version of the agreement with the stricken "duress provision" was an acceptance by Hydrojet (not a rejection and counteroffer) of the essential terms of the agreement, and the "duress provision" was "mere legalese" that had no bearing on the agreed-upon essential terms. *Id*. at 1205-06.

By contrast, if the evidence shows that an offer has not been accepted in full, but with conditions, an agreement has not been formed. In *Spinola v. Kelley* (Pa. Cmwlth., No. 2120 C.D. 2015, filed September 21, 2016), 2016 WL 5172670

18

(unreported),[13] a dispute between and architect and client, the parties communicated by email and at one point, the client sent the architect an email stating that the architect could start work on the project and that the client would sign a revised contract, but with certain listed changes to the scope of the project. *Id.*, slip op. at 3, 2016 WL 5172670, at **1-2. The architect sent a revised contract to the client, who replied that the architect's "latest proposal . . . is not acceptable to me" because it did not include a date of completion, did include charges for tasks the client had previously said were not necessary, and raised the price. *Id.*, slip op. at 3-4, 2016 WL 5172670, at *2. This Court found that a contract had not been formed because the client's first email included material changes that rendered it a counteroffer, despite some language in it that could be read as an acceptance. *Id.*, slip op. at 7, 2016 WL 5172670, at *3. We wrote:

> As our Supreme Court has explained, "[t]his court has long adhered to the position of 1 Restatement, Contracts, § 60 (1932), that "a reply to an offer, though purporting to accept it, which adds qualifications or requires performance of conditions, is not an acceptance but is a counter-offer." To constitute a contract, the acceptance of the offer must be absolute and identical with the terms of the offer. Rather than assenting to the terms of [the architect's latest proposed agreement, [the client's return] email proposed substantially different terms and thus is more properly considered a counter-offer than an acceptance.
>
> [The architect and the client] had also not come to a meeting of the minds with nothing left but to memorialize the agreement in writing. A meeting of the minds requires the concurrence of both parties to all the terms of the agreement; anything less will result in a failure to execute an enforceable contract.

---

[13] This unreported decision is cited as persuasive authority pursuant to Section 414(a) of this Court's Internal Operating Procedures. 210 Pa. Code § 69.414(a).

19

*Id*., slip op. at 7-8, 2016 WL 5172670, at \*\*3-4. After further analyzing the parties' email exchanges and highlighting the points where the client objected to aspects of the architect's proposal and would not agree to their inclusion, we concluded: "Therefore, it was apparent that [the architect and the client] were never in agreement on all terms of the agreement such that there could have been a meeting of the minds." *Id*., slip op. at 8, 2016 WL 5172670, at \*4.

Here, the Swartzes aver that at the February 17, 2021, meeting, the parties, along with the Board and zoning officer, agreed upon the essential terms of a settlement agreement: the zoning officer would consider the Swartzes' November 2020 application and provide instructions to the Swartzes, which would be included in a formal written settlement agreement; once the written agreement was executed by the parties, the Swartzes would have six months to pay the Township an amount representing the Township's legal fees ($5,302.35) per the Board's March 1, 2021, resolution); the Township could issue zoning permits and approvals after the Swartzes' payment; and the contempt proceedings would be stayed for six months so that the foregoing could be accomplished and the agreement reduced to writing and executed. Swartzes' Br. at 35-36.

According to the Swartzes, the February 25, 2021, and March 1, 2021, correspondences, which have been added to the record as discussed above in note 5, and the Board's March 1, 2021, resolution memorialized these essential terms and reflected a meeting of the minds that constituted a binding agreement. *Id*. at 37-38. To the Swartzes, the ensuing inability of the parties to reduce the agreement to writing did not negate the enforceability of that agreement. *Id*. at 38-41 & 47-51. The Swartzes indicate that if the Township's August 2020 draft included only the above terms, they would have signed it. *See id*. at 51. However, they objected to

20

the Township's inclusion in the draft of the original zoning violation notices and the trial court's August 2019 and April 2020 orders upholding those violations. *Id*. at 51. The Swartzes maintain that inclusion of these in the final agreement would have left them open to future zoning citations by the Township, but also state that these terms were otherwise unessential and did not negate their prior acceptance of the essential terms reflected in the Board's March 1, 2021, resolution. *Id*.

The Township asserts that there was no meeting of the minds between the parties before it sent the August 2021 draft settlement agreement, which it characterizes as its sole offer that the Swartzes refused via their counsel's September 2021 emails. Township's Br. at 26-28 & 37-39. The Township views the Swartzes' motion to enforce as a frivolous and unfounded attempt to relitigate the trial court's August 2019 order and April 2020 verdict, both of which have long been final, and which upheld the 2017 violation notices and ordered the Swartzes to rectify the conditions on their property in addition to the $19,051.25 judgment representing penalties for the violations as well as the Township's attorneys' fees and costs. *Id*. at 28-29. The Township denies that the Board's March 2021 resolution reflected a meeting of the minds between the parties and avers that its limited purpose was to memorialize the Township's conditional agreement to stay proceedings on its contempt petition while the parties negotiated settlement terms that were to be reduced to a writing and executed by both sides. *Id*. at 30 & 35.[14]

---

[14] The Township also assails the Swartzes' counsel for multiple alleged violations of Pennsylvania Rule of Evidence 408(a), which bars admission of evidence of settlement negotiations "either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction[.]" Pa.R.E. 408(a). Township's Br. at 31-32. The Swartzes reply that in the context of a motion to enforce a settlement agreement, evidence concerning the nature and formation (or not) of a settlement is certainly admissible because the reasons for the rule, such as the avoidance of tainting a jury tasked with determining a negligence claim, are simply not present in this context. Swartzes' Reply Br. at 26-27. The Swartzes are

The trial court focused on the parties' communications in August and September of 2021. Trial Ct. Op. at 7-8. The court noted the Township counsel's August 30, 2021, email to the Swartzes' counsel enclosing the draft agreement, which stated that the draft was for "*review and discussion purposes*," but added that if the terms were acceptable to the Swartzes, the Township's counsel would recommend that the Board approve the agreement at its September 6, 2021, meeting. *Id*. at 7 (emphasis added by trial court). Next, the court quoted from the Swartzes' counsel's September 3, 2021, email to the Township's counsel, which stated that "the terms of the *proposed draft settlement agreement* are not acceptable to my clients and *require further review and discussion*." *Id*. at 8 (emphasis added by trial court). The court then considered the Swartzes' counsel's September 23, 2021, email, which stated that she was "working on some *comments and suggested revisions* to the Township's *proposed settlement agreement*." *Id*. (emphasis added by trial court).

The trial court then concluded: "These exchanges demonstrate that the parties were still negotiating and never assented to a final agreement." *Id*. The trial court stated that instead, "[the Swartzes'] claim amounts to a conditional acceptance that cannot be the basis of a meeting of the minds or [an] intent to be mutually bound." *Id*. (citing *Espenshade v. Espenshade*, 729 A.2d 1239, 1247 (Pa. Super. 1999) (stating that a response to an offer that purports to accept but actually changes the terms of the offer is either a rejection and counteroffer or, at best, a conditional acceptance, neither of which establishes an enforceable agreement).

correct. When the issue is whether a settlement agreement has been reached or the nature of that agreement, evidence tending to prove or disprove that discrete issue is permissible before a judge. *See Baribault v. Zoning Hearing Bd. of Haverford Twp.*, 236 A.3d 112, 116-17 (Pa. Cmwlth. 2020) (discussing various exhibits admitted by trial court in context of motion to enforce settlement that discussed status of settlement without mention of Rule 408); *Hydrojet*, 220 A.3d at 1205-06 (same).

The trial court's determination that the parties never reached a binding and enforceable agreement is supported by the evidence. The record shows that the parties agreed on certain things, including the $5,302.35 amount to resolve the judgment, the zoning officer's provision of instructions for the Swartzes to secure permits for their land use in association with their November 2020 application, and the mutual expectation that the parties would execute an agreement in writing, after which the Swartzes would have six months to pay the compromised judgment amount; these elements were included in the Board's March 1, 2021, resolution. R.R. at 183a-84a. However, the resolution also cited the trial court's April 2020 verdict stating that the Swartzes were to cease, desist, and cure the 2017 violations within 30 days of the verdict. *Id.* When that same information was subsequently included in the August 2021 draft agreement, the Swartzes balked, while nevertheless later describing the inclusion of the verdict in their October 2021 motion to enforce as inessential to the agreement. *Compare id.* at 222a, *with id.* at 165a, 168a & 170a.

This supports the trial court's conclusion that the parties never came to a meeting of the minds. Trial Ct. Op. at 8. The August and September 2021 dispute over the 2017 violations and the trial court's 2020 verdict concerning those violations shows that the parties never perceived the relationship between the violations and verdict on the one hand, and the potential settlement on the other hand, in the same way, much less expressly agreed on it. The Swartzes' communications and motion to enforce in the late summer of 2021 implied that the parties' agreement encompassed the trial court's prior verdict in the Township's enforcement action that ordered the Swartzes to cease, desist, and cure the original violations and wiped the slate clean of any obligation on their part to do so: "Here, the Parties entered into

23

a valid and enforceable settlement agreement with the intent to be bound on the agreed upon essential terms to settle *this enforcement action* that is enforceable by this Court under the law." R.R. at 168a (Swartzes' motion to enforce; emphasis added).

Relatedly, record evidence shows that the Swartzes never accepted the underlying violations, even after the trial court's verdict. In the September 23, 2021, email, the Swartzes' counsel stated expressly that the Swartzes "dispute[d] the enforcement notice" based on their belief that there were "no limitations under the [Ordinance] for parking commercial vehicles on a commercially zoned property." *Id*. at 222a. The Swartzes' counsel therefore asked for a separate "agreement for my clients to maintain the status quo with the existing parked trucks and trailers on their property until they obtain all the final approvals required to engage in the permitted use that they've applied for with the Township." *Id*.

The Township's actions and expressions, however, reflect that it viewed any agreement in 2021 as limited to resolving the judgment amount and staying the contempt petition temporarily, with the underlying violations and the trial court's verdict ordering the Swartzes to cease, desist, and cure those violations remaining intact and in effect until they were separately resolved via the Swartzes' future performance of the zoning officer's instructions.

The February 25, 2021, and March 1, 2021, correspondences, which as discussed in note 5 above have been added to the record on the Swartzes' motion, do not contradict this conclusion. The Township's counsel's February 25, 2021, letter stated clearly that the $5,302.35 figure, if agreed to by the Swartzes, would only resolve the $19,051.25 money judgment, but added that "negotiation of the remaining terms" remained to be accomplished and that the Township expressly

retained its right "to any claims, defenses, issues of fact or law or any other matters whatsoever" in the overall matter. *See* Township Counsel's February 25, 2021, email and letter to the Swartzes' counsel. The Swartzes' counsel's response similarly stated that the issue at that time was only the "monetary aspect of a settlement." *See* Swartzes' Counsel's March 1, 2021, email and letter to the Township's counsel. The attached letter similarly reflected only an agreement as to the money judgment "contingent upon successful negotiation of the overall settlement terms in this matter" and that payment would not be due until "after we reach an approved agreement as to all settlement terms in writing." *Id.*

Moreover, given that the zoning officer's instructions included the need for the Swartzes to obtain environmental and other clearances, the Township's inclusion of terms in the Board's March 1, 2021, resolution and August 30, 2021, proposed settlement agreement for the Swartzes to remove multiple vehicles from their property pending final approval and issuance of a permit was not unreasonable.[15] *See* R.R. at 183a-84a & 211a-12a. The Board's March 2021 resolution stated only the $5,302.35 figure for resolution of the judgment and that contempt proceedings would be stayed for six months while the parties "shall engage in good faith negotiations to formalize the terms of a settlement of all remaining issues and/or disputes relating to the Township's pending Petition for Contempt *and* in the [zoning enforcement matter]." *Id.* at 183a-84a (emphasis added).

---

[15] The zoning officer's report with instructions for the Swartzes' November 2020 permit application indicated a proposed use for automotive sales, which was permitted by right in the BC district, and an 1,800-square-foot addition to an existing structure on the property, which as proposed met Ordinance requirements. R.R. at 202a. The Swartzes were to provide preliminary land development plans and drawings with all supporting documents, including stormwater management plans, floodplain compliance, soil erosion and sediment controls, and clearances from the county soil conservation district, utility companies, the Department of Transportation, and the county planning commission. *Id.*

We note that the resolution mentioned but did not emphasize the original violations and prior verdict, and it appears the parties never discussed them. However, this does not mean that the violations and verdict disappeared as an issue or were inessential. In fact, the status and import of the violations and verdict led to the dispute now before us, which implies the opposite. The existence of the violations and verdict in this gray area suggests that any meeting of the minds related to less than "*all* the terms, as well as the subject-matter, of the agreement." *Mazzella*, 739 A.2d at 536 (emphasis added).

Moreover, the trial court's ultimate conclusion that a settlement agreement was not formed is further supported by the parties' correspondence during the months between the Board's March 2021 resolution and the Township's August 2021 draft agreement, despite the Swartzes' position that at that point, an agreement had already been reached. In fact, those exchanges suggested that some essential terms remained to be addressed. The Board's March 1, 2021, resolution stated twice that "remaining issues/and or disputes between the parties" were yet to be resolved, and on April 8, 2021, when the Township moved to stay the contempt proceedings for six months, it reported to the trial court that the parties "wish to engage in good-faith negotiations in an effort to settle and resolve the Township's pending [p]etition for [c]ontempt as well as all other remaining issues and/or disputes between them." R.R. at 146a-47a & 183a-84a. The Township's counsel's March 2, 2021, email forwarding the resolution to the Swartzes' counsel stated that it reflected a "conditional compromise of the money judgment" and expressed hope that the parties could "hammer out the terms of the underlying settlement agreement." *Id*. at 186a. The Swartzes now read that language as indicating an already extant "underlying agreement" of all remaining issues with only details left. Swartzes' Br.

at 35-41. The Township, however, reads it as stating that an agreement regarding the issues underlying the judgment and contempt petition was yet to be reached in the first place. Township's Br. at 30 & 35. Again, the very ambiguity here negates a conclusion that the parties reached a meeting of the minds prior to August 2021.

That ambiguity is not limited to the Township's communications. On March 2, 2021, the Swartzes' counsel wrote to the Township's counsel as follows:

> I agree that we can work out the terms for the settlement agreement. . . . I can provide you with a list of settlement terms to start negotiations or you can provide a list to me. How do you want to start moving this forward? I want to hammer out a final settlement agreement as quickly as we can.

*Id*. at 188a. This missive implied that negotiations were yet to begin and the parties needed to exchange terms, while at the same time, a final settlement agreement needed only to be hammered out. On April 22, May 12, May 21, and July 19, the Swartzes' counsel emailed the Township's counsel, variously stating that the parties need to "get terms for a settlement moving forward," "take action to work out the settlement terms," and "formalize the terms for a settlement of this matter," "move forward with negotiating the terms for a settlement," and "discuss getting terms together for a settlement agreement." *Id*. at 192a, 196a-97a, 199a, & 204a. Other than the sole mention above of "hammering out a final settlement," none of these can reasonably be read as the expression of a party that believes it has already reached an agreement with the other side.

This matter is distinguishable from *Hydrojet*, on which the Swartzes rely. There, the parties reached a verbal agreement at a meeting that Hydrojet moved to enforce. 220 A.3d at 1205. The trial court found that the water authority did not dispute that initial verbal agreement, that counsel for both sides approved the written

27

draft agreement, and that Hydrojet actually began performance by paying a lump sum to the authority. *Id*. at 1202-03 & 1205-06. Even though Hydrojet's president initially struck out the "duress provision" of the agreement, he ultimately signed the agreement as drafted. *Id*. at 1202. It is unclear from the Hydrojet opinion whether the trial court specifically found the "duress provision" to be inessential, but this Court did conclude that it was "mere legalese that had no bearing on the actual material and essential terms of the settlement agreement" that had already been formed. *Id*. at 1205.

Here, by contrast, the Township disputes that a verbal agreement was ever reached or that counsel for both sides (as opposed to a party principal) agreed on the August 2021 draft of that agreement. Nothing in the record suggests that the Swartzes began performance of their duties under the alleged agreement. Critically, as described above, the effect on the potential settlement of the original violations and the trial court's 2019 order and 2020 verdict concerning those violations was clearly not "mere legalese that had no bearing on the actual material and essential terms of the settlement agreement." *Hydrojet*, 220 A.3d at 1205-06. To the contrary, the parties' differing views on this issue, as set forth in their contemporary correspondence, reflect that those issues were essential to the settlement, and in the absence of consensus, an agreement was never formed, because no meeting of the minds occurred as to "*all* the terms, as well as the subject-matter, of the agreement." *Mazzella*, 739 A.2d at 536 (emphasis added).

Instead, the evidence in this case resembles *Spinola*, where the email exchanges in evidence reflected parties talking past each other rather than to each other in a mutual exchange, and the communications ended with the client listing objectionable terms in the architect's proposal and stating flatly that it was "not

28

acceptable to me." *Spinola*, slip op. at 3-4, 2016 WL 5172670, at *2. Here as well, the evidence reveals months of exchanges between the parties' attorneys that did not bear fruit, much less exemplify a meeting of the minds as to all essential terms, particularly the status and import of the 2017 violations and the trial court's 2020 verdict, which to the Township was a final adjudication, but which the Swartzes expressly repudiated. Then, the Swartzes' counsel received the Township's August 30, 2021 proposed draft agreement and responded that it was "not acceptable" because it included that very term. As such, the trial court's denial of the Swartzes' motion to enforce was supported by evidence of record and did not constitute legal error.[16] *Hydrojet*, 220 A.3d at 1204.

## IV. Conclusion

In light of the foregoing, the Swartzes' application for relief seeking to enlarge the record is granted and the trial court's June 30, 2022, order is affirmed.

_____
CHRISTINE FIZZANO CANNON, Judge

---

[16] Because we conclude that an enforceable settlement agreement was never formed between the parties, we do not reach whether such an agreement was approved by the Board at an open meeting as required by Section 704 of the Sunshine Act, 65 Pa.C.S. § 704.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

East Penn Township              :
                                      :
        v.                  :
                                        :
William A. Swartz and Sarah L. Swartz, :   No. 769 C.D. 2022
              Appellants    :

## O R D E R

AND NOW, this 20th day of October, 2023, the Application for Relief seeking to enlarge the record filed by William A. Swartz and Sarah L. Swartz is GRANTED. The June 30, 2022, order of the Court of Common Pleas of Carbon County is AFFIRMED.

 

 

_____
CHRISTINE FIZZANO CANNON, Judge